J-S24008-21

2021 PA Super 194

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LISA DANEA HARRINGTON | : | |
| | : | |
| Appellant | : | No. 318 WDA 2021 |

Appeal from the Judgment of Sentence Entered September 24, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0000009-2018,
CP-65-CR-0005404-2019

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.:                    **FILED: September 29, 2021**

Appellant, Lisa Danea Harrington, appeals from the September 24, 2020

Judgments of Sentence entered in the Westmoreland County Court of

Common Pleas[1] following her conviction of four counts of Hindering

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant concedes in response to this Court's March 26, 2021 Rule to Show Cause that she filed one Notice of Appeal listing both Westmoreland County docket numbers in violation of our Supreme Court's decision in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (mandating separate notices of appeal at each docket implicated by the appealed-from order).  **See** Appellant's Response to Rule to Show Cause, 3/31/21.  However, our review reveals that the trial court repeatedly advised Appellant that she could appeal its ruling by filing a single notice of appeal.  **See** N.T., 9/24/20, at 27-29 (referencing "**an** appeal," "**this** appeal" in discussing Appellant's appeal rights) (emphasis added).  We have held that such advisement is erroneous and, thus, constitutes a breakdown in the operation of the court. **Commonwealth v. Larkin**, 235 A.3d 350, 354 (Pa. Super. 2020) (*en banc*). **See also Commonwealth v. Stansbury**, 219 A.3d 157, 160 (Pa. Super.

*(Footnote Continued Next Page)*

Apprehension or Prosecution and one count each of Firearms Not to be Carried Without a License and Tampering With or Fabricating Physical Evidence.[2] Appellant challenges two evidentiary rulings by the trial court. After careful review, we affirm.

Appellant's charges arose from her involvement with her cousin, Rahmael Holt, and others after Holt killed a police officer. We, thus, provide the following background, together with the facts and procedural history relevant to this appeal. Shortly after 8:00 PM on November 17, 2017, Holt shot and killed New Kensington Police Patrolman Brian Shaw.[3] Police recovered video surveillance footage that tracked the interaction between Patrolman Shaw and Holt from the time they initially encountered each other through Patrolman Shaw's foot pursuit of Holt, which culminated in Holt shooting Patrolman Shaw. The video further captured Holt fleeing in the direction of 1206 Victoria Avenue, New Kensington after the shooting, and other officers responding and tending to the fallen officer.[4]

---

2019). Therefore, we shall address Appellant's claims rather than quash this appeal.

[2] 18 Pa.C.S. § 5105(a)(1), 5105(a)(2), 5105(a)(3), 5105(a)(5), 6106(a)(1), and 4910(1), respectively.

[3] The Commonwealth successfully prosecuted Holt for Patrolman Shaw's murder.

[4] In addition, Patrolman Shaw called into police dispatch during his encounter with Holt. Those calls were also recorded.

Within minutes of Patrolman Shaw's murder, Holt arrived at 1206 Victoria Avenue, a residence approximately 165 yards south-east of the location where Holt murdered Patrolman Shaw. Holt was flustered and bleeding from his hand. Holt's associates, Taylor Mitchell, Lakita Cain, Antoinette Strong, Michael Luffey, and Holly Clemens, resided at 1206 Victoria Avenue.[5] Mitchell, Cain, and Strong were at home at the time and had heard gunshots outside.[6] Upon Holt's arrival at the residence, he went directly into the basement and remained there for a short time before going upstairs to Lakita Cain's bedroom. Cell phone records showed calls from Cain's phone to Appellant's phone at 8:15 PM, 8:21 PM, and 8:23 PM, and a call from Appellant's phone to Cain's phone at 8:28 PM. Holt left the 1206 Victoria Avenue residence sometime shortly thereafter.

At 8:34 PM, Appellant called Holt's girlfriend, Vanessa Portis, and asked Portis if Portis had seen Holt. Fifteen minutes later, Holt, using Appellant's phone, called Portis and informed Portis that he had lost his phone. Holt asked Portis, to whom the line was registered, to disconnect the lost phone. Police later recovered Holt's phone on the property next to 1206 Victoria Avenue.

At 9:02 PM, Portis received another call from Appellant's phone. Around that same time, Appellant dropped Holt off at Portis' residence. Portis,

---

[5] Holly Clemons' and Michael Luffey's two children also lived in the residence.

[6] Luffey and Clemons were not at home when Holt arrived but had received a phone call from Cain who advised them that a police officer had been shot. They returned home shortly thereafter and observed Holt acting anxious and bleeding from his hand.

unaccompanied by Appellant, then drove Holt to the home of Holt's mother in nearby Homewood.

Text message records indicate that, after Appellant dropped Holt off with Portis, Appellant communicated with her nephew about selling a gun that evening. Text messages also show that Appellant informed her mother-in-law that Appellant had been in the area of the shooting and was aware that a manhunt for Holt was underway.

Just before midnight on November 17, 2017, Appellant spoke on the phone for almost 14 minutes with Lakita Cain. They spoke again three times between 1:00 AM and 3:05 AM, and at 11:47 AM on November 18, 2017.

On November 18, 2017, Appellant arrived at the 1206 Victoria Avenue residence with her children. Appellant first went upstairs to Cain's bedroom. She then went downstairs to the basement where she retrieved something, emerging from the basement carrying a purse and a paper bag. She then carried the purse and bag to her minivan and left without her children. She returned approximately 20 minutes later, collected her children, and left the residence.

Over the course of the weekend following Patrolman Shaw's murder, numerous law enforcement investigators visited and questioned the residents of 1206 Victoria Street; none of the residents were candid and truthful with

investigators, at least initially.[7] Lakita Cain and Taylor Mitchell repeatedly failed to disclose that Holt had visited shortly after Patrolman Shaw's murder and misled investigators about the nature and extent of their relationship with Holt. In addition, Cain and Mitchell sent a text message to Michael Luffey on the cell phone that he shared with Holly Clemons, instructing him to deny to police that Holt had come to the residence after the shooting.

Ultimately, Cain admitted that Holt had come to 1206 Victoria Avenue immediately after the residents heard gunshots on November 17, 2017. She also admitted that she had permitted Holt to use her phone that night because he had lost his. Cain also admitted that she had spoken with Appellant over the course of the ensuing days, and that Appellant had come to 1206 Victoria Avenue on November 18, 2017, to retrieve something from the basement and then informed Cain that "it was handled."[8]

Following Holt's apprehension by police, the Commonwealth charged Appellant with the above crimes, alleging that Appellant had communicated

---

[7] Detective Ray Dupilka testified at an *in camera* hearing during trial that Luffey and Clemons were present the weekend after the shooting when investigators were investigating Patrolman Shaw's murder, but he did not speak with Clemons until over a year after the murder. He stated that he believed Clemons had not given him any false information during that interview. N.T., 3/3/20, at 278-79.

[8] **See** N.T., 3/3/20, at 271-74 (where, to establish the existence of a conspiracy to hinder Holt's apprehension and prosecution between Appellant and the residents of 1206 Victoria, Detective Dupilka testified *in camera* about the details of Lakita Cain's eventual admissions to Detective Dupilka).

with and provided transportation to Holt after he murdered Patrolman Shaw and that Appellant disposed of the firearm that Holt had used in the shooting.

Prior to trial, Appellant filed a pretrial Motion *in Limine* to preclude as hearsay the testimony of the Commonwealth's witness, Holly Clemons. The Commonwealth intended to offer testimony from Clemons that Lakita Cain told Clemons that Appellant had come to their residence after the shooting to retrieve the firearm that Holt had used. The Commonwealth argued that, because Clemons conspired with Cain and the other residents of 1206 Victoria Avenue to hinder the apprehension and prosecution of Holt, her testimony was admissible as an exception to the rule prohibiting hearsay testimony. The trial court agreed and denied Appellant's Motion *in Limine*.

The jury trial proceeded with the Commonwealth presenting the testimony of numerous witnesses to establish the above facts. Relevant to the instant appeal, Appellant objected to the Commonwealth's playing the approximately eleven-minute surveillance video recording, with synchronized audio obtained from recordings of Patrolman Shaw's calls to police dispatchers, of Patrolman Shaw's murder. Appellant argued that the video recording was irrelevant, and, even if relevant, the substantial prejudice it would cause outweighed any potential probative value. Appellant offered to stipulate to the fact of the shooting and the time and location in which it took place.

The Commonwealth argued that the video recording was relevant to establish the underlying crime for which Appellant hindered apprehension or

prosecution. The Commonwealth also argued that the video recording was relevant to prove that Holt fled in the direction of 1206 Victoria Avenue, which is the location where Holt hid the murder weapon, and adjoins the property where Holt dropped his cell phone. The court overruled Appellant's objection to this evidence, issued a cautionary instruction to the jury, and permitted the Commonwealth to play the video recording.

On March 5, 2020, the jury convicted Appellant of the above charges. On September 24, 2020, the trial court sentenced Appellant to an aggregate term of 3 to 7 years' incarceration.

Appellant filed a timely Post-Sentence Motion, which the court denied on February 23, 2021. This appeal followed. Appellant complied with the court's Order to file a Pa.R.A.P. 1925(b) Statement and the trial court relied on its Opinion and Order denying Appellant's Post-Sentence Motion.

Appellant raises the following issues on appeal:

[1.] Did the [c]ourt err in admitting into evidence and allowing the Commonwealth to present to the jury video and audio of the murder of [Patrolman] Shaw and subsequent emergency response[] when the minimal relevance of the video could have been cured with simple stipulations that would not have led to the high likelihood of unfair prejudice to [Appellant]?

[2.] Did the [c]ourt err in admitting testimony from Holly Clemons that Lakita Cain told her that [Appellant] came to Cain's residence to remove the gun that Rahmael Holt used to shoot [Patrolman] Shaw[] when said testimony is inadmissible hearsay that does not fall within the co-conspirator exception to the rule against hearsay?

Appellant's Brief at 4 (suggested answers omitted).

Appellant's issues challenge two of the trial court's evidentiary rulings allowing the admission of certain evidence. The admission of evidence is within the discretion of the trial court. *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* An abuse of discretion by the trial court, and a showing of resulting prejudice, constitutes reversible error. *Commonwealth v. Glass*, 50 A.3d 720, 724-25 (Pa. Super. 2012).

**Video Recording of Patrolman Shaw's Murder**

In her first issue, Appellant asserts that the trial court erred in permitting the Commonwealth to play for the jury the video recording of Patrolman Shaw's shooting and his communications with police dispatchers prior to his death. Appellant's Brief at 8. She argues that the recording was of minimal relevance compared to the prejudice it caused and was not necessary to establish any fact at issue, particularly because the parties could stipulate to the facts in the recording. *Id.* at 10. She concludes that the recording caused an "inappropriate emotional response" in the jury that unfairly prejudiced her and, thus, she is entitled to a new trial. *Id.* at 10-11.

Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or

- 8 -

less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, the trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

"[W]hen examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014). We presume that jurors, when given a cautionary instruction, have followed the instruction. *Id.*; *Commonwealth v. Roney*, 79 A.3d 595, 640 (Pa. 2013).

The Commonwealth asserted that the contested evidence was relevant to prove the elements of the Hindering Apprehension or Prosecution offense. In particular, the evidence was relevant to establish the underlying crime that Holt committed from which Appellant's charges arose.

The Crimes Code provides, relevantly, that a person commits the offense of Hindering Apprehension or Prosecution if, with the intent to hinder the apprehension or prosecution or another person, she:

(1) harbors or conceals the other;

(2) provides or aids in providing a weapon, transportation, disguise[,] or other means of avoiding apprehension or effecting escape;

(3) conceal or destroys evidence of the crime, or tampers with a witness, informant, document[,] or other source of information, regardless of its admissibility in evidence;

***

(5) provides false information to a law enforcement officer.

18 Pa.C.S. § 5105(a).

To sustain a conviction under Section 5105(a), the Commonwealth must also provide evidence of the underlying crime that prompted the official action a defendant was accused of hindering. *Commonwealth v. Johnson*, 100 A.3d 207, 214 (Pa. Super. 2014).

It is well-settled that "the Commonwealth may prove its case with any proper evidence and does not have to accept the accused's stipulations." *Commonwealth v. Yarris*, 549 A.2d 513, 525 (Pa. 1998) (internal punctuation omitted).

Instantly, the trial court explained that the video recording was relevant because it provided evidence of Holt's underlying crime and demonstrated a connection between Holt's presence in the vicinity of 1206 Victoria Avenue at the time of the shooting and Appellant's later presence there. Trial Ct. Op., 2/23/21, at 17. The court also emphasized that, to minimize any potential prejudice the evidence might cause Appellant, it provided the jury with a cautionary instruction prior to the Commonwealth's playing the video recording. The court instructed the jury as follows:

> Before [the Commonwealth] shows this video, ladies and gentlemen, I want to give you a cautionary instruction. You're going to see a video which shows [Patrolman] Shaw pursing Rahmael Holt ultimately leading to the homicide of Patrolman Shaw by Rahmael Holt. Of course, this is disturbing to everyone, however the reason I'm allowing it to be shown is to explain the route that Rahmael Holt took on November 17, 2017[,] before and after the homicide. It is not alleged, and you are not to think, that

- 10 -

[Appellant] had anything to do with the actual homicide. The Commonwealth is alleging that she helped Rahmael Holt after the homicide. I just want to caution you that you don't [*sic*] convict her based on this. This is just part of the whole story of what occurred.

N.T., 3/2/20, at 182-83.

We agree with the trial court that the evidence that the Commonwealth proffered was relevant to prove the underlying crime that was an element of the offense of Hindering Apprehension or Prosecution. In other words, this evidence satisfied the requirement that the Commonwealth establish that Holt committed Patrolman Shaw's murder in order to prove that Appellant hindered the apprehension and prosecution of Holt for the murder. Additionally, the Commonwealth was not obligated to accept Appellant's offer to stipulate that Holt committed the murder.

Finally, to the extent that Appellant contends that the video recording caused the jurors to have an "inappropriate emotional response" that unfairly prejudiced Appellant, we find that the court provided a specific and detailed limiting instruction to the jury to avoid such a response. As such, we presume that the jury followed that instruction and we reject Appellant's argument. Accordingly, the trial court did not abuse its discretion in admitting the video recording. Appellant is, thus, not entitled to relief on this claim.

**Holly Clemons's Testimony about Lakita Cain's Statements**

In her second issue, Appellant asserts that the trial court erred in denying her Motion *in Limine* to preclude as hearsay Holly Clemons' testimony pertaining to statements that Lakita Cain made to Clemons. Appellant's Brief

at 11. In particular, Appellant objected to Clemons' testimony that Cain told Clemons that Appellant had come to Cain's residence to retrieve the firearm that Holt used to shoot Patrolman Shaw. *Id.* at 11-12. *See* N.T., 3/3/20, at 316 (where Clemons testified that Cain told her Appellant "had come to get [Holt's] gun"). Appellant argues Clemons' testimony was inadmissible under the exception because the Commonwealth did not prove that Clemons was a co-conspirator in the conspiracy to hinder Holt's apprehension or prosecution. *Id.* at 16-19. Appellant also argues that, even if Clemons and Cain were part of a conspiracy, Cain did not make this statement to Clemons in furtherance of a conspiracy. *Id.* at 12, 15-6.

"When reviewing a trial court's denial of a motion *in limine*, this Court applies an [ ] abuse of discretion standard of review." *Commonwealth v. Schley*, 136 A.3d 511, 514 (Pa. Super. 2016). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted).

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801(c). It is generally inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Rules of Evidence. *Commonwealth v. Busanet*, 54 A.3d 35, 68 (Pa. 2012).

Rule 803(25)(E) provides an exception to the hearsay rule for a statement that a party's co-conspirator makes during and in furtherance of

their conspiracy. Pa.R.E. 803(25)(E). For this exception to apply, the trial court must first find the existence of a conspiracy between the party testifying and the declarant, and second, that the declarant made the statement to the party testifying during the course of their conspiracy and in furtherance of the conspirators' common design. ***Commonwealth v. Johnson***, 838 A.2d 663, 674 (Pa. 2003). Stated another way, both the declarant and the party testifying must have been part of a conspiracy when the declarant made the statement, and the statement must have been made in furtherance of the conspiracy.

The Commonwealth is not required to have charged or prosecuted the declarant with conspiracy to prove that she and the party testifying are part of a conspiracy. ***Commonwealth v. Basile***, 458 A.2d 587, 590 (Pa. Super. 1983). Rather, the Commonwealth may establish the existence of a conspiracy inferentially by showing the relation, conduct, or circumstances of the declarant and the party testifying. ***Commonwealth v. Dreibelbis***, 426 A.2d 1111, 1115 (Pa. 1981).

In this case, Appellant asserts that the trial court erred in permitting Clemons to testify about statements that Cain made to Clemons because: (1) Clemons was not part of a conspiracy at the time of Cain's statement to Clemons; and (2) Cain's statement to Clemons was not "in furtherance" of a conspiracy to hinder Holt's arrest and prosecution. We address each contention in turn.

The trial court rejected Appellant's claim that the Commonwealth did not present any evidence that Clemons was involved in any conspiracy to hinder Holt's arrest and prosecution. In particular, the court found as follows:

The evidence showed repeated contact between Holt and the other residents of 1206 Victoria Avenue, which include Lakita Cain, Taylor Mitchell, Holly Clemons, Michael Luffey, and Antoinette Strong. Over a period of four days, during each of which the police appeared at that address, the residents, including Clemons, concealed knowledge of Holt's whereabouts, his status as a resident of that address, and the fact that he had been there shortly after the shooting in a frantic state of mind, with a bleeding hand. Likewise, the residents failed to disclose to law enforcement that [Appellant] appeared at the residence the day after the shooting, retrieved something from the basement[,] and left the residence for approximately 15-20 minutes, while her children remained at the residence. **Clemons admitted that she did not tell law enforcement on the evening of November 17, 2017[,] nor did she reveal that [Appellant] had been to the house or that Cain had told her that [Appellant] had picked up Holt's gun.**

Trial Ct. Op. at 21 (emphasis added). Based on this evidence, the trial court concluded that Clemons was part of a conspiracy with the other members of 1206 Victoria Avenue and Appellant to hinder Holt's apprehension and prosecution. *Id.* at 21-22.

Following our review, we agree with the trial court that the evidence supports the trial court's conclusion that Appellant, Clemons, Cain, and the other residents of 1206 Victoria Avenue were engaged in a conspiracy to hinder the apprehension and prosecution of Holt when they concealed information from the police about Holt's activities and location after the

shooting, and the location of the murder weapon and Appellant's efforts to dispose of it. Thus, Appellant's contrary claim lacks merit.

Appellant also argues that Cain's statement to Clemons that Appellant had come to 1206 Victoria Avenue to retrieve Holt's gun merely constitutes a "narrative declaration [] of past activity made to a non-participant in the asserted conspiracy," and was not made in furtherance of any broader conspiracy to hinder Holt's apprehension and prosecution. Appellant's Brief at 15-16 (quoting **Johnson**, 838 A.2d at 675). In support of this argument, Appellant asserts that Cain's statement—which Appellant characterizes as a "declaration of a past event"—only refers to alleged attempts to dispose of a firearm but does not implicate the "broader conspiracy" to hinder Holt's arrest and prosecution. Appellant's Brief at 16.

The trial court rejected this argument, finding that "the presence and later removal and secreting of the murder weapon was central to the conspiracy" between Appellant and the residents of 1206 Victoria Avenue to hinder the apprehension and prosecution of Holt. Trial Ct. Op. at 22. Following our review, we agree. Here, the conspiracy between Appellant and the residents had two primary components: (1) the repeated misstatements to police and concerted silence about Holt's presence immediately after the shooting; and (2) Holt's secreting of the firearm followed by Appellant's disposal of it. Because Cain's statement to Clemons—that Appellant went to 1206 Victoria Avenue to remove Holt's gun—concerned Cain's observation and knowledge of the latter component of the conspiracy, the record supports the

trial court's conclusion that Cain made her statement in furtherance of the conspiracy. Appellant's argument that the statement was a mere "declaration of a past event," is, thus, meritless.

Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's Motion *in Limine* to preclude as hearsay Clemons' testimony that Cain told Clemons that Appellant had come to 1206 Victoria Avenue to retrieve Holt's weapon. This issue, thus, fails to garner Appellant relief.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/29/2021