J-S42042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVE MARK PARSONS | : | No. 628 WDA 2022 |

Appeal from the Order Entered May 18, 2022
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000509-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVE MARK PARSONS | : | No. 629 WDA 2022 |

Appeal from the Order Entered May 18, 2022
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000503-2021

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: APRIL 11, 2023**

The Commonwealth appeals from the order denying without prejudice its motion *in limine* seeking admission of sexually explicit social media messages sent by Appellee, Steve Mark Parsons, to the 17-year-old daughter of his girlfriend ("the victim"), as well as other similar earlier communications

---

[*] Retired Senior Judge assigned to the Superior Court.

sent by Appellee to the victim and others. For the reasons set forth below, we affirm.

In August 2021, the Port Allegany Police Department received a report from the victim that she had received a series of messages on the Facebook Messenger from a user who she believed to be Appellee. In the messages, Appellee repeatedly complimented the victim's physical appearance and requested that she send him photographs of her. In addition, Appellee sent her photographs of himself naked from the waist down, showing his penis.

Appellee was arrested and charged by information with obscene and other sexual materials, corruption of minors, unlawful contact with a minor— open lewdness, and criminal use of a communication facility.[1] Following his arrest on those charges, Appellee was charged at a separate docket number with resisting arrest and possession of a controlled substance.[2] On October 18, 2021, the Commonwealth filed a notice of joinder of the two cases.

On April 13, 2022, the Commonwealth filed the motion *in limine* at issue in this appeal, which provides as follows:

> 1.) The Commonwealth seeks to introduce screenshots of messages the victim received.
>
> 2.) The Commonwealth seeks to introduce statements from others that they received text communications that contain similarities from [Appellee] as well.

---

[1] 18 Pa.C.S. §§ 5903(c)(1), 6301(a)(1)(i), 6318(a)(2), and 7512(a), respectively.

[2] 18 Pa.C.S. § 5104 and 35 P.S. § 780-113(a)(16), respectively.

3.) The Commonwealth seeks to introduce testimony from the victim about another incident where [Appellee] made inappropriate comments about her body and they talked about body dysmorphia.

Motion *In Limine*, 4/13/22. The motion further stated that "the Commonwealth seeks to introduce the above evidence to show identify [sic] and intent." ***Id.***

On May 17, 2022, six days before the cases were scheduled to go to trial, a hearing was held on the motion *in limine*. At the hearing, the prosecution explained that she sought the trial court's ruling on the admissibility of four categories of evidence: (1) screenshots of Facebook Messenger messages sent to the victim in July or August of 2021, including comments on the victim's appearance and photographs of a penis, by an individual with an unknown username but who she understood to be Appellee; (2) the victim's testimony regarding interactions with Appellee when she lived with her mother and Appellee earlier in 2021, prior to the victim's placement in foster care, including Appellee making sexual comments to her and showering with an open bathroom door; (3) screenshots of text messages that the victim's older sister, T.P., received on March 20, 2021 from a phone that Appellee and her mother shared, which showed a photograph of a penis and vagina; and (4) a text message that a Children and Youth Services ("CYS") caseworker received on March 25, 2021 from someone she understood to be Appellee, which stated "I can't wait to put this rock-hard dick inside of you. You won't regret coming to see us." N.T., 5/17/22, at 12-17.

The trial court and defense counsel were provided with copies of the relevant messages at the hearing, but the communications were not admitted as exhibits and do not appear in the certified record. While each of the items the Commonwealth sought to introduce were discussed at the hearing, the parties and court focused on the screenshots of the Facebook messages sent to the victim and the text messages sent to the victim's sister. With respect to the Facebook communications, the prosecutor acknowledged that records of the full communication had not been obtained from Facebook or the victim's or Appellee's electronic devices. *Id.* at 1-23. Nevertheless, the prosecutor stated that the victim would demonstrate Appellee's authorship of the messages by testifying that the sender of the messages used Appellee's real first name in one message; the explanation that the sender provided for his username was that it was the first name of his son and the last name of his favorite singer; discussions about the victim's mother and the sender's fear that she was having an affair; and the sender's acknowledgement of an earlier conversation with the victim regarding body dysmorphia. *Id.* at 15-16, 19. In addition, the prosecutor indicated that a police officer would testify that Appellee admitted that the Facebook account at issue was his. *Id.* at 15. However, the victim and the officer did not testify at the motion *in limine* hearing.

The victim's sister, T.P., did testify at the hearing. She stated that after receiving the photographs of a penis and vagina via text message, she called the phone number on which she had received the message and Appellee

answered, stating "[a]h, I'm sorry, I'm sorry." *Id.* at 27-28. According to

T.P., the couple shared two phones, but the phone number on which she

received the photos from was Appellee's "main phone not [her] mom's." *Id.*

at 29. T.P. stated that she tried to call her mother immediately afterwards to

alert her to the fact that Appellee was sending "crude photos . . . with their

shared phone"; when they finally spoke on the topic two weeks later, her

mother said that Appellee "was looking for somebody to have a threesome

with and he sent [the photos] to a bunch of people," including T.P., the victim,

and the CYS caseworker. *Id.* at 28, 31-33.

At the conclusion of the hearing, the trial court indicated that the

mother's statement regarding Appellee sending explicit photos to various

women was testimony and that her testimony would be "critical" to the issue

of authentication. *Id.* at 37-38, 40. The court stated that it "would change

the authentication issue dramatically" if the mother were to testify, for

example, that she saw Appellee send the texts and messages at issue,

reprimanded him, and he responded "Oh, my god, I sent that to your

daughter[,] I'm sorry." *Id.* at 38. The prosecutor asked for clarification

whether the court's ruling applied to just the text messages sent to T.P. or

also to the screenshots the victim captured of her Facebook Messenger

communications with Appellee, and the court responded that, without

mother's testimony, there were "serious issues regarding authenticity of all

of" the evidence that the Commonwealth sought to introduce through the

motion *in limine*. *Id.* at 40-41. The trial court entered its order the day after

the hearing denying the Commonwealth's motion without prejudice and "for the reasons stated on the record." Order, 5/18/22.

The Commonwealth filed notices of appeal at both trial court dockets the following day, certifying that the trial court's denial of its motion *in limine* terminates or substantially handicaps the prosecution. ***See*** Pa.R.A.P. 311(d).[3] The Commonwealth raises the following issues on appeal:

> Whether the trial court erred in or abused its discretion in denying the motion in limine.

> Whether the trial court erred in or committed an abuse of discretion in requiring the testimony of [A]ppellee's girlfriend, who is the mother of the victim, to authenticate the messages.

> Whether the trial court erred in or abused its discretion in failing to rule on the admissibility of messages received by other females and a prior incident between the victim and [A]ppellee.

Commonwealth's Brief at 5-6 (unnecessary capitalization, suggested answers, and trial court disposition omitted).

We first address our jurisdiction to hear this appeal.[4] The Commonwealth filed its appeal from the trial court's interlocutory order

---

[3] The Commonwealth filed its concise statement of errors complained of on appeal on June 17, 2022, while the trial court filed its Pa.R.A.P. 1925(a) opinion on July 25, 2022.

[4] On June 16, 2022, this Court issued a *per curiam* order directing the Commonwealth to show cause why this appeal should not be quashed as it was taken from an order that denied its evidentiary motion without prejudice. The Commonwealth filed a response, and a subsequent order was entered discharging the show-cause order and directing that the matter may be revisited by the merits panel.

denying its motion *in limine* pursuant to Rule of Appellate Procedure 311(d), which provides as follows:

> In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d). "Rule 311(d) is often invoked in appeals addressing the admission or exclusion of evidence," and this Court generally will not inquire into the Commonwealth's certification of substantial hardship based on an appeal from an interlocutory order suppressing or excluding Commonwealth evidence. ***Commonwealth v. Woodard***, 136 A.3d 1003, 1005 (Pa. Super. 2016); ***see also Commonwealth v. Cosnek***, 836 A.2d 871, 875 (Pa. 2003) ("When a pretrial motion removes evidence from the Commonwealth's case, only the prosecutor can judge whether that evidence substantially handicaps his ability to prove every essential element of his case.").

However, as the trial court recognized in its Pa.R.A.P. 1925(a) opinion, this Court recently rejected the Commonwealth's certification of substantial hardship in an unpublished decision that also involved the denial of a Commonwealth evidentiary motion "without prejudice." ***See*** Trial Court Opinion, 7/25/22, at 5 n.1; Order, 5/18/22; ***see also*** Pa.R.A.P. 126(b) (unreported decisions filed after May 1, 2019 are not binding but may be cited for their persuasive value). In ***Commonwealth v. Hamilton***, Nos. 290-292 WDA 2020, 2021 WL 225635 (Pa. Super. filed January 22, 2021) (unpublished

memorandum), the Commonwealth filed a motion for a hearing to determine whether it could admit statements under the Tender Years Hearsay Act, which the trial court denied without prejudice after a hearing. *Id.* at *1. Citing the trial court's explanation in its that Rule 1925(a) opinion that it was "perplexing" that the Commonwealth filed an appeal when it "could have simply renewed" its motion, we found that the appealed-from order did not have the practical effect of terminating or substantially handicapping the prosecution. *Id.* at *3 (citation omitted). We therefore dismissed the appeal. *Id.* at *3-4.

Here, the trial court opines that "[s]ince the Commonwealth had the option of renewing their request, the [May 18, 2021 o]rder did not terminate or substantially hinder their case[,] and[] the appeal should be dismissed and the matter remanded." Trial Court Opinion, 7/25/22, at 5. However, there is an added aspect to the trial court's ruling in this case that distinguishes this matter from *Hamilton*. The trial court did not merely deny the Commonwealth's motion *in limine* and afford it the opportunity to refile with better or additional support. Rather, as explained above, the trial court indicated that the Commonwealth would be unlikely to authenticate any of the evidence that was the subject of its motion without the testimony of the victim's mother, who was also Appellee's girlfriend. N.T., 5/17/22, at 40-41. The Commonwealth explains to this Court that the trial court's ruling places it in the undesirable position of having to call Appellee's girlfriend in order to authenticate evidence that is at the heart of its case. *See* Commonwealth

Response to Show-Cause Order, 6/24/22, at 3, 5. We accept the Commonwealth's determination that the order at issue would substantially handicap the prosecution of Appellee.

We now turn to the merits of this appeal. When reviewing a trial court's denial of a motion *in limine*, this Court applies an abuse of discretion standard of review. **Commonwealth v. Harrington**, 262 A.3d 639, 646 (Pa. Super. 2021). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Id.** (citation omitted).

Authentication of evidence is governed by Pennsylvania Rule of Evidence 901. Pa.R.E. 901. "Generally, authentication requires a low burden of proof: The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be." **Commonwealth v. Jackson**, 283 A.3d 814, 818 (Pa. Super. 2022) (citation omitted); **see also** Pa.R.E. 901(a). Testimony of an individual with personal knowledge may be sufficient for authentication, but evidence may also be authenticated through circumstantial evidence. Pa.R.E. 901(b)(1), (4); **Jackson**, 283 A.3d at 818.

Rule 901 was amended in 2020 to address the authentication of "digital evidence," which constitutes "a communication, statement, or image existing in an electronic medium," such as "emails, text messages, social media postings, and images." Pa.R.E. 901(b)(11), Comment. Rule 901(b)(11)

provides that the proponent may demonstrate that an individual or entity is connected to digital evidence through:

> (A) direct evidence such as testimony of a person with personal knowledge; or
>
> (B) circumstantial evidence such as:
>
>> (i) identifying content; or
>>
>> (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11).

The Comment to Rule 901 gives additional clarity on the manner in which digital evidence may be attributed to an author. Under the rule, the proponent must do more than present circumstantial evidence of ownership, possession, or control of a device or account to show authorship of digital evidence, although such evidence may be considered as a factor in demonstrating the author's identity. Pa.R.E. 901, Comment. Circumstantial evidence to demonstrate authorship may be sufficient and "may include self-identification or other distinctive characteristics, including a display of knowledge only possessed by the author." *Id.* "The proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." *Id.* We have explained that Rule 901(b)(11)'s standard is consistent with our caselaw concerning the authentication of digital evidence that developed prior to the amendment of

the rule. ***Jackson***, 283 A.3d at 818; ***Commonwealth v. Bowens***, 265 A.3d 730, 760 n.18 (Pa. Super. 2021) (*en banc*); ***Commonwealth v. Orr***, 255 A.3d 589, 601 n.3 (Pa. Super. 2021).[5]

Pennsylvania Rule of Evidence 404(b) is also at issue in this appeal. Under this rule, evidence of "any other crime, wrong, or act" is generally inadmissible to prove an individual's propensity to act in accordance with their character. Pa.R.E. 404(b)(1). However, evidence of such other bad acts may be admitted for some other purpose, such as to prove as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In a criminal case, the court must also assess whether the probative value of the other bad acts evidence outweighs the potential for unfair prejudice. ***Id.*** Moreover, the Commonwealth "must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial." Pa.R.E. 404(b)(3).

---

[5] This Court engaged in an exhaustive review of our recent cases on the authentication of digital evidence in ***Orr***, and we have subsequently addressed this subject in ***Bowens*** and ***Jackson***, although only the latter case applied Rule 901(b)(11), as the trials in ***Bowens*** and ***Orr*** occurred before the effective date of the rule's amendment. ***See Jackson***, 283 A.3d at 817-19; ***Bowens***, 265 A.3d at 759-62; ***Orr***, 255 A.3d at 595-601.

On appeal, the Commonwealth asserts that it was prepared to present the testimony of the victim, T.P., and the CYS caseworker but that the trial court cut the Commonwealth off at the outset of the hearing and demanded that the motion *in limine* be heard only on offers of proof and legal argument. The Commonwealth maintains that it was only able to call "the older sister to answer one question posed by the" the trial court, which "became singularly focused on the [victim's] mother's involvement and said that the mother's testimony would be necessary for authentication." Commonwealth's Brief at 16. The Commonwealth states that, after T.P.'s testimony, the trial court proceeded to sequester the remaining witnesses who might testify at trial and then immediately announced its ruling. The Commonwealth argues that the trial court therefore "failed to hold an evidentiary hearing" on its motion and failed to fully consider the evidence that it sought to introduce through its motion *in limine*. *Id.* at 19.[6]

Upon review, we discern no abuse of discretion in the trial court's denial of the Commonwealth's motion without prejudice. While the Commonwealth argues that the trial court prevented it from calling its witnesses and instead demanded only legal argument, we agree with the trial court's explanation in its Rule 1925(a) opinion that, rather than demanding only legal argument, it

---

[6] While the Commonwealth lists three questions in its brief, the argument section of its brief is not "divided into as many parts as there are questions to be argued" in violation of our appellate rules, and therefore we address its legal arguments jointly. *See* Pa.R.A.P. 2119(a).

sought to focus the prosecutor at the outset of the hearing on the specific "legal issue[s]" as to which she sought a ruling from the court rather than her general request for "a [p]re-[t]rial determination on the admissibility of" the evidence. N.T., 5/17/22, at 13-14; Trial Court Opinion, 7/25/22, at 9-10. The trial court did not deny a request for testimony from any witness at the hearing, and the court permitted the testimony of T.P., the only witness that the prosecutor called. N.T., 5/17/22, at 26-27. As to the victim and the CYS caseworker, the prosecutor merely described what the witnesses "would testify" to and the contents of the messages they received from Appellee without actually calling them to testify. *Id.* at 12-17. Therefore, we find no support for the Commonwealth's assertion that the court ruled on the motion without allowing for evidence to be submitted.

Turning to the specific requests in the motion *in limine*, we agree with the trial court's finding that the Commonwealth did not meet its burden of authenticating the screenshots of the Facebook messages that were sent to the victim. At the hearing, the prosecutor made an offer of proof as to the victim's testimony why she believed Appellee was behind the pseudonymous account—including his explanation of the account's username, the use of Appellee's first name, and statements of concern regarding the faithfulness of the victim's mother—as well as a police officer's testimony as to Appellee's admission of ownership of the account. *Id.* at 15-16, 19. However, neither of these witnesses testified at the hearing, and the court was thus left to review only the content of the messages themselves, without any additional

evidence that would shed light on why Appellee was the author. Put simply, the Commonwealth did not "**produce evidence** sufficient to support a finding" as to the authorship of the messages. Pa.R.E. 901(a) (emphasis added).

However, we note our disagreement with the trial court's singular focus on the victim's mother's potential testimony as the crucial factor for authentication of the Facebook screenshots. Although the mother's testimony that Appellee sent similar photos to the victim and other women could assist in authenticating the Facebook messages, the Commonwealth described other evidence at the hearing that would connect Appellee to the messages, including testimony of the victim and officer, as well as "contextual clues" in the messages. *Orr*, 255 A.3d at 598. While we take no position on whether the evidence identified by the Commonwealth would be sufficient to meet its burden of proof for authentication of the Facebook messages,[7] we cannot join

---

[7] We observe that similar evidence has been found to be indicative of authorship of social media and text messages in our prior decisions. *See Jackson*, 283 A.3d at 819 (incorporation of defendant's nicknames into social media account usernames); *Bowens*, 265 A.3d at 762 (text messages using defendant's nickname); *Orr*, 255 A.3d at 601 (conversation in text messages regarding ongoing custody dispute between defendant and victim); *Commonwealth v. Wright*, 255 A.3d 542, 551 (Pa. Super. 2021) (use of defendant's first name and reference to his vehicle in text messages); *Commonwealth v. Talley*, 236 A.3d 42, 60 (Pa. Super. 2020) (testimony of victim who received messages and circumstantial evidence in content of messages, including discussion of intimate matters that were only known between defendant and victim), *affirmed on other grounds*, 265 A.3d 485 (Pa. 2021).

in the trial court's pronouncement that the mother's testimony is necessary for authentication before the Commonwealth has presented the other evidence on which it intends to rely.

With regard to the motion *in limine*'s request for a ruling on the victim's testimony concerning Appellee's face-to-face sexual comments to her in early 2021 and Appellee showering with the door open in her presence, the prosecutor only briefly mentioned this evidence at the hearing and did not explain on what basis it sought to introduce the evidence, whether under Rule 404(b) or otherwise.[8]  In the absence of any specific request by the Commonwealth for a ruling from the trial court on this evidence, the court did not abuse its discretion in denying the motion *in limine* as to this evidence.

Although not entirely clear from the record, it appears that the Commonwealth intended to use the evidence of the text messages sent to T.P. and the CYS caseworker both as circumstantial evidence for the purpose of authentication of the Facebook messages to the victim and as other bad act

_____

Our Supreme Court's decision in **Talley** is also relevant to this matter as it addresses the separate issue raised by the trial court concerning the admissibility of screenshots rather than original text or social media messages.  Trial Court Opinion, 7/25/22, at 10-12; **see Talley**, 265 A.3d at 533-37 (applying best evidence rule and holding that screenshots the victim saved of harassing messages sent by the defendant were admissible as duplicates of the originals).

[8] As the criminal information appears to cover the date range when the face-to-face conversations between Appellee and the victim occurred and several of the charges against Appellee could arguably apply to such conduct, it is unclear to this Court whether the earlier communications constitute part of the charged criminal conduct.

evidence to be admitted at trial to show Appellee's intent, identity, or absence of mistake under Rule 404(b)(2). Motion *In Limine*, 4/13/22; N.T., 5/17/22, at 17; Commonwealth's Brief at 15. However, the Commonwealth's motion *in limine* did not constitute sufficient notice of its intended use under Rule 404(b)(3), as it only generally stated that "the Commonwealth seeks to introduce the above evidence to show identify [sic] and intent" without referencing the "specific nature" or "reasoning for the use of" the other bad acts evidence. Motion *In Limine*, 4/13/22; Rule 404(b)(3) (effective April 1, 2022).

Furthermore, as became apparent at the hearing, the text messages also suffer from authentication issues of their own that must be overcome before they may be used for any purpose. T.P.'s testimony established that she received photographs of a penis and vagina from a cell phone that was shared between Appellee and her mother, yet even exclusive control of a device is insufficient by itself to authenticate authorship of digital evidence. Pa.R.E. 901(b)(11)(B)(ii), Comment; **Jackson**, 283 A.3d at 818; **see also** Trial Court Opinion, 7/25/22, at 11-12. As the trial court noted, T.P.'s conversation with her mother concerning Appellee's intentions in sending the message was hearsay and Appellee's statement to T.P. "[a]h, I'm sorry, I'm sorry" did not constitute an explicit admission of authorship. N.T., 5/17/22, at 28, 37-38; Trial Court Opinion, 7/25/22, at 11. Similarly, while the CYS caseworker did not testify at the hearing, it appears that the same concerns apply to the text messages she received propositioning her for sex as

authentication requires more than simply the caseworker's testimony that she received the messages from a number she believed belonged to Appellee.

Accordingly, we are unpersuaded by the Commonwealth's arguments that the trial court abused its discretion in denying the motion *in limine* without prejudice. We therefore affirm the trial court's May 18, 2021 order. Following our return of the certified record, the Commonwealth may renew its requests and attempt to remedy the deficiencies noted by this Court and the trial court.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/11/2023