J-S17027-22

2022 PA Super 156

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KHALID JACKSON :
:
Appellant : No. 1427 EDA 2021

Appeal from the Judgment of Sentence Entered May 21, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005165-2019

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

OPINION BY LAZARUS, J.:                    **FILED SEPTEMBER 13, 2022**

Khalid Jackson appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Philadelphia County, following his conviction of first-degree murder and related offenses.  After careful review, we affirm.

On April 11, 2019, at 5:00 p.m., decedent, Raymond Grimes, was walking to his parked car on 9th and Somerset Streets in Philadelphia when an individual wearing black clothing and a mask chased him, shot at him, and fled the scene.  N.T. Jury Trial, 5/19/21, at 56-58.  The perpetrator shot Grimes fourteen times with a .40 caliber gun that had an extended magazine.

---

[1] Jackson purports to appeal from the July 1, 2021 order denying his post-sentence motion.  However, "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions."  **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2011) (en banc) (citation omitted).  Instantly, Jackson's judgment of sentence was entered on May 21, 2021.

*Id.*, 5/18/21, at 86. Video surveillance from a nearby store showed the shooter using his left hand to operate the firearm. *Id.*, 5/19/21, at 57-58.

Hascir Walton, a friend of both Jackson and Grimes, witnessed the shooting and testified at trial. Walton testified that he identified Jackson as the shooter when he met with the Philadelphia Homicide Unit upon being arrested for unrelated charges. *Id.*, 5/18/21, at 172-73. Walton also testified that Jackson called Walton from Jackson's girlfriend's phone to ask him to look for Jackson's phone, which Jackson believed he had lost at the scene of the shooting. *Id.* at 180. Jackson subsequently called Walton back to say that he found it. *Id.* at 181. Jackson was arrested on May 10, 2019, for Grimes' murder. *Id.*, 5/19/21, at 139.

A jury trial commenced on May 17, 2021. During the trial, the Commonwealth presented evidence from three Instagram accounts with the following usernames: "cod_boosie," "jackboy_boosie," and "jackboy_x2."[2] Defense counsel conceded at trial that Jackson was the owner of the "cod_boosie" account.[3] *Id.*, 5/18/21, at 22. The Commonwealth presented pictures from the "jackboy_boosie" account and "jackboy_x2" account, which included pictures of Jackson's nickname, "Boosie," spelled out in cash, a firearm with an extended magazine, and a video of Jackson holding a gun in

---

[2] The Commonwealth established that Jackson's nicknames are "Boosie" and "Jackboy." *Id.*, 5/18/21, at 13; *id.*, 5/19/21, at 139-40.

[3] Jackson stated that cod_boosie was his account when he exercised his right of allocution at sentencing. *Id.*, 5/21/21, at 57.

his left hand at 9th and Somerset Streets. The video was posted on the internet two weeks before Grimes' murder.

On May 21, 2021, a jury convicted Jackson of first-degree murder,[4] carrying a firearm without a license,[5] carrying a firearm on a public street or public property,[6] possessing an instrument of crime,[7] and recklessly endangering another person.[8] Jackson proceeded immediately to sentencing and the court sentenced him to life in prison,[9] followed by two consecutive sentences of three to six months' incarceration for contempt of court due to Jackson's inappropriate decorum during trial.[10] The court imposed no further penalty on the remaining convictions. Jackson filed a post-sentence motion, which was denied on July 1, 2021.

_____

[4] 18 Pa.C.S. § 2502(a).

[5] *Id*. at § 6106.

[6] *Id.* at § 6108.

[7] *Id.* at § 907.

[8] *Id.* at § 2705.

[9] *Id.* at § 1102(a) (stating mandatory sentence for first-degree murder is life imprisonment).

[10] Jackson was twice found in contempt during trial for making a variety of disruptive comments including threatening the assistant district attorney, interrupting both the judge and defense counsel, and defiantly and repeatedly talking back to the judge. N.T. Jury Trial, 5/19/21, at 74-78; *id.*, 5/20/21, at 164-171.

Jackson filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He now raises one question for our review:

> Did the trial court abuse its discretion when it permitted the Commonwealth to admit [into evidence] photos and videos allegedly posted by [Jackson] on two Instagram accounts[,] where the Commonwealth failed to properly authenticate the social media posts under Pa.R.E. 901 by establishing [Jackson's] authorship of the posts or ownership of the accounts?

Appellant Brief, at 4.

Instantly, Jackson argues that the trial court erred in admitting evidence of the above-described social media accounts where the Commonwealth failed to authenticate the content under Pa.R.E. 901(b)(11). Specifically, Jackson claims that the circumstantial evidence of ownership of the accounts or authorship of the posts presented by the Commonwealth did not satisfy the admissibility requirements under Rule 901, *see* Appellant Brief, at 10, and that he was prejudiced by the admission of the social media evidence at trial. *Id.* at 19. We disagree.

> When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Talley*, 236 A.3d 42, 55 (Pa. Super. 2020) (citations omitted). "The threshold inquiry with admission of evidence is whether evidence is relevant." *Commonwealth v. Collins*, 888 A.2d 564, 577 (Pa. Super. 2005). Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. Super. 2002). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 901 governs the authentication of evidence, requiring authentication prior to the admission of electronic evidence. *See Commonwealth v. Murray*, 174 A.3d 1147, 1157 (Pa. Super. 2017). Generally, authentication requires a low burden of proof:

> The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. *See* Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. *See* Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to [Pa.R.E. 901(b)(1)], may be authenticated by

other parts of [Pa.R.E. 901(b)], **including circumstantial evidence** pursuant to [Pa.R.E. 901(b)(4)]. ***See*** Pa.R.E. 901(b)(4).[11]

***Commonwealth v. Mangel***, 181 A.3d 1154, 1160 (Pa. Super. 2018) (emphasis added). Pennsylvania Rule of Evidence 901 was amended prior to Jackson's trial to address digital evidence, including social media posts. ***See*** Pa.R. E. 901(b)(11) & cmt.[12]

This section provides:

(11) Digital Evidence. To connect digital evidence with a person or entity:

(A) direct evidence such as testimony of a person with personal knowledge; or

(B) circumstantial evidence such as:

(i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11) & cmt. Further, the comments to Rule 901 explain that "[t]he proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence

---

[11] Evidence that can satisfy the authentication requirement can be "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.Evid. 901(b)(4).

[12] The amendment became effective on October 1, 2020, prior to Jackson's trial.

- 6 -

to support a finding that a particular person or entity was the author." Pa.R.E. 901 cmt. "Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication [but such evidence may be enough] in combination with other evidence of the author's identity." **Id.**

This Court has stated that the amendment to Rule 901 is consistent with the prior prevailing law. **Commonwealth v. Mosley,** 114 A.3d 1072, 1081-82 (Pa. Super. 2015) (authentication of electronic communications requires more than mere confirmation that number or addresses belonged to a particular individual; circumstantial evidence that tends to corroborate the identity of the sender, required); **Commonwealth v. Orr**, 255 A.3d 589, 601 n.3 (Pa. Super. 2021). We have also recognized that social media evidence presents challenges for authentication because of the ease with which a social media account may be falsified, or a legitimate account may be accessed by an imposter. **Commonwealth v. Daney**, 210 A.2d 333, 338 (Pa. Super. 2019). However, we have acknowledged that the same uncertainties can exist with other types of evidence, such as written documents where signatures could be forged, or a letterhead copied. **See In re F.P**., 878 A.2d 91, 95 (Pa. Super. 2005).

We adhere to the same standards of authentication for social media accounts as with text messages and instant messages. **Id.**; **see Mosley**, 114 A.3d at 1082.

Initially, [the authentication of social media evidence] is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender. Other courts examining the authentication of social media records have ruled that the mere fact that an electronic communication, on its face, purports to originate from a certain person's social networking account is generally insufficient, standing alone, to authenticate that person as the author of the communication.

*Id.* (citations omitted).

Here, the Commonwealth presented evidence that Jackson went by the nicknames "Jackboy" and "Boosie." N.T. Jury Trial, 5/17/21, at 15-16. Additionally, the Commonwealth introduced the names of the following accounts: "cod_boosie," "jackboy_boosie," and "jackboy_x2." *Id.*, 5/18/21, at 13-16, 22. The Commonwealth also introduced the biographical sections of all these accounts, which are all similar to each other, and all the accounts contained a pindrop location at "9somerset" along with the phrases "Chopordrop," "The real jackboy no cap just ask around," and "#freesheem." *Id.*, 5/17/21, at 19; *id.*, 5/21/21, at 12; *see* Trial Court Opinion, 9/14/21, at 5. Next, the Commonwealth established that both accounts featured pictures of Jackson, taken by both Jackson himself and by others. N.T. Jury Trial, 5/18/21, at 11-12, 18-20; *id.*, 5/19/21, at 87-91. The information contained in the "jackboy_boosie" and "jackboy x2" accounts is consistent with the information present on the "cod_boosie" account, which Jackson admitted he

owned and controlled. *Id.*, 5/18/21, at 22; *id.*, 5/21/21, at 57; *see also* Trial Court Opinion, 9/14/21, at 7.

We further observe that the trial court opinion lists these similarities between the "jackboy_boosie" and "jackboy_x2" accounts and Jackson's "cod_boosie" account, recognizing that "all three [accounts] featured photos of [Jackson] as the profile picture [,] contained numerous other photographs of [Jackson]. . . [and] had substantially similar bios, and featured identical nicknames, hashtags, locations, and statements." Trial Court Opinion, 9/14/21, at 7.

Based upon our review of the record, we agree with the trial court that the Commonwealth properly authenticated these social media accounts because there was substantial circumstantial evidence linking the accounts to Jackson. *Mosley, supra*; *Daney, supra*. Accordingly, we conclude that the trial court did not abuse its discretion and, thus, Jackson is entitled to no relief. *See Talley*, *supra*.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/13/2022