J-S01038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARRET RICHARD BLACK | : | |
| | : | |
| Appellant | : | No. 627 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 11, 2022
In the Court of Common Pleas of Erie County Criminal
Division at No(s):  CP-25-MD-0000225-2022

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED:  May 16, 2023**

Garret Richard Black appeals from the judgment of sentence imposed following a non-jury trial in which he was found guilty of indirect criminal contempt[1] ("ICC") stemming from him having violated a Protection From Abuse ("PFA") Act order.[2] For this offense, Black was sentenced to six months of probation (along with attendant conditions) and a $300 fine. On appeal, Black challenges whether the evidence was sufficient to convict him of ICC. We affirm.

As set forth by the lower court:

> Trudy Schmidt obtained a PFA [o]rder against Garret Black on December 16, 2021. The [o]rder stated that Black was to have

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 23 Pa.C.S. § 6114.

[2] **See** 23 Pa.C.S. § 6101 *et seq*.

no contact with Ms. Schmidt either directly or through third parties. [Black], by posting on Facebook Messenger, asked Ms. Schmidt's friend Kaylie Fitch to contact Ms. Schmidt with a message. Kaylie contacted Trudy by a Facebook posting on February 7, 2022. Based upon that contact, an [ICC] [p]etition was filed by Ms. Schmidt against … Black. A hearing on the [p]etition was held May 11, 2022. After hearing testimony from Trudy Schmidt and Kaylie Fitch, [Black] was found guilty of [ICC] and [thereafter] sentenced[.] …

Trudy Schmidt testified that she usually goes by the nickname ["]Emet["]. Schmidt used to date … Black, but obtained a PFA [order] against him on December 16, 2021. The [o]rder specified no contact by Black with Ms. Schmidt either directly or through third parties. Ms. Schmidt was contacted on behalf of Black by her friend Kaylie Fitch on February 7, 2022.

Kaylie Fitch is a friend of Trudy Schmidt. Fitch knew Black because he was dating Trudy, but had also met him previous to his relationship with Trudy. Fitch identified Black in the courtroom. Kaylie was aware that Schmidt had a PFA [order] against [Black]. [Black] contacted Ms. Fitch by Facebook Messenger posting on February 7, 2022. [Black] used the last name "Diabolus" in that posting to Fitch. Fitch knew it was him because she had "friended" with Black on a previous Facebook account Black had, and had [received] messages on that account from Black. [Black] posted on the earlier account that he was going to create a new profile (account) and used the same last name[:] "Diabolus". In fact, Black also used the same first name on the new account that he had used in the previous account – "Orabus". It was from the new account that Fitch received what she characterized as "threatening" messages for Trudy. [Black] used Schmidt's nickname of "Emet" in the message, and Kaylie knew Black was obviously referring to Trudy. Trudy Schmidt was the only woman Black dated with whom Kaylie had a relationship. The messages in question were read into the record:

… So the first message, it states that, hey, since my friend cannot contact your friend I have a request. One, tell her that Kevin's a retard and said what he said drunk and got his butt handed to him by G. Two, let her know G says he's sorry for everything. Three, if Emet does not drop the PFA G will be suing her in court for perjury and defamation of Character. The first one's a felony and relates to Emet

having no actual proof of G claiming to shoot her because he never did. If Emet would like to avoid this and any future problems, drop the PFA. If you do not respond, the motion to sue will continue and they'll see Emet in court. Thanks. G just wants to have his guns back and cannot believe Emet snitched and stabbed him in the back. He doesn't care to see her again if that's what she wants, but his gun rights will not be taken so easily and he will win. The choice is hers. Thanks you and good night.

The "G" who was referred to in the message was Garret Black. Kaylie Fitch absolutely believed the account from which she got the message was Black's new account. On cross examination, Fitch was asked what made her think the message was from Black and not someone else:

The entire message, like, it's clearly from him even though it's in the third person. I'm sorry, I don't know how to vocalize that other that it's very detailed and knows intimate details that nobody else would know.

When confronted that she only believed the message was from Black because of the conflict her friends were going through, Kaylie responded:

There's other screenshots from his Garret Black account saying he's making a new account and to contact him there. And other messages that, you know, he was looking for Trudy and he was asking for $50 [if] anyone could tell him the location. And there's just similarities between his new account where he was posting and his old account. Like the same posts using the same--[.]

Ms. Fitch admitted that she didn't know if someone else was using [Black's] Facebook Messenger when the message in question was sent.

Trial Court Opinion, 8/8/22, at 1-3 (unpaginated) (record citations omitted).

Following an adjudication of guilt and subsequent sentencing, Black filed a timely notice of appeal. Thereafter, the relevant parties complied with their

respective obligations under Pennsylvania Rule of Appellate Procedure 1925.

Accordingly, this matter is ripe for review.

On appeal, Black presents one issue:

1. Was the evidence sufficient to find him guilty of ICC when the evidence/testimony presented were based on hearsay?[3]

Appellant's Brief, at 3.

Broadly, we start from the premise that contempt convictions are reviewed for an abuse of discretion. **See Commonwealth v. Haigh**, 874 A.2d 1174, 1177 (Pa. Super. 2005). In giving latitude to the lower court's discretion, our task is to ascertain whether the facts support that court's ultimate determination. **See id**., at 1176-77.

As with any claim that contests whether there was sufficient evidence to sustain a conviction, we employ a well-settled series of precepts:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

---

[3] We note that despite referencing the word "hearsay," Black's argument appears limited to whether the Commonwealth failed to demonstrate that he was the author of the Facebook messages that formed the basis for his ICC conviction. In fact, hearsay is only referenced twice (without any further explanation) in the argument section of Black's brief. To the extent Black challenges the admission of those messages as hearsay, the lower court found such writings to be opposing party statements under Pa.R.E. 803(25)(A) and therefore excepted by the rule against hearsay. **See** Trial Court Opinion, 8/8/22, at 6 (unpaginated).

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa. Super. 2001) (citations and quotation marks omitted).

To establish ICC, the Commonwealth must prove: "1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." ***Commonwealth v. Walsh***, 36 A.3d 613, 619 (Pa. Super. 2012) (citation and quotation omitted).

Here, Black does not explicitly contest whether the Commonwealth failed to meet any of those four requirements. Instead, Black suggests that, given the potentially anonymous nature of social media, the Commonwealth presented 'hearsay' evidence and, consequently, did not prove that Black had been the author of the various messages sent to Kaylie Fitch intended for Trudy Schmidt. More specifically, Black argues that "the Commonwealth failed to present evidence that properly authenticated [him] as the sender of the messages from the Facebook [a]ccount." Appellant's Brief, at 6. Black avers

that the Commonwealth could not conclusively establish who authored and sent the messages much less who "owned" the account sending those messages. Instead, "the record more established [that] the text messages were sent from a third party, not affiliated with [Black]." *Id*., at 7. Accordingly, the Commonwealth failed to prove he committed the crime of which he was convicted.

Effectively, Black asks this Court to review his sufficiency argument after omitting these disputed messages from the record. However, with sufficiency claims, we "do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Commonwealth v. Arias*, 286 A.3d 341, 350 (Pa. Super. 2022) (citations omitted).[4]

_____

[4] Although Black alludes to authenticity concerns associated with the lower court's admission of the various Facebook messages, he fails to raise or develop a specific challenge to the admissibility of those messages. Accordingly, this issue has been waived. *See Commonwealth v. Antidormi,* 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted).

Assuming, *arguendo*, that Black properly raised such a claim, the court found that the Commonwealth properly authenticated ownership of the at-issue Facebook account and messages under Pa.R.E. 901(b)(11). In particular,

> Kaylie Fitch detailed that she knew Black, had been friends with him on his earlier account when he used the last name "Diabolus" as well as the first name "Orabus" – the name on the message she received [on] February 7, 2022. She testified [that] Black wrote on the previous account that he was creating a new profile

_____

(or account). The message refers to Emet which was Trudy Schmidt's nickname. The message asks for the PFA [order] dropped and apologizes about everything. Fitch stated the only person she knew who Black dated was Trudy. Even though the message [was] allegedly written by a third party, Kaylie knew it was Black due to the message being so detailed and containing intimate details no one else but [Black] would know.

Trial Court Opinion, 8/8/22, at 5 (unpaginated).

In **Commonwealth v. Mangel**, we found no abuse of discretion when the lower court determined that the Commonwealth "did not introduce … testimony from any other knowledgeable party to substantiate that the Facebook page (and, by association, the posts and messages contained therein) belonged to [the appellee]." 181 A.3d 1154, 1163 (Pa. Super. 2018).

Here, while circumstantial in nature, Kaylie Fitch's testimony illuminated: (1) the unique and identical naming convention of a previous Facebook profile belonging to Black and the one currently in question, i.e. "Orabus Diabolus"; (2) the consistent references in the messages to "Emet" as a nickname for Trudy Schmidt; (3) that the messages noted particulars about the nature of the PFA order; and (4) an apology coming from Black. Notwithstanding that the messages were written from a third-party perspective, the lower court certainly did not abuse its discretion in admitting this evidence, as Kaylie Fitch's corroborative testimony highlighted distinctive characteristics known only to Black and, too, sufficiently supported the notion that he was the author of the messages. **See Commonwealth v. Jackson**, 283 A.3d 814, 819 (Pa. Super. 2022) (presenting evidence of defendant's known aliases in social media account usernames showed authorship of messages); **Commonwealth v. Orr**, 255 A.3d 589, 601 (Pa. Super. 2021) (text messages referencing an ongoing legal dispute between defendant and victim assisted in authentication of those messages); **Commonwealth v. Talley**, 236 A.3d 42, 60 (Pa. Super. 2020) (text messages containing matters that were known only by defendant and victim provided circumstantial evidence as to the authenticity of those messages), **affirmed on other grounds**, 265 A.3d 485 (Pa. 2021). **But see Mangel**, 181 A.3d at 1164 ("[T]here were no contextual clues in the chat messages that identified [the appellee] as the sender of the messages.").

Given our wide deference to the Commonwealth as verdict winner, our review of the record compels a conclusion that Black's sufficiency argument fails. We emphasize that the Commonwealth may prove every element of ICC circumstantially and, too, that it was for the lower court, sitting as fact-finder, to adjudicate witness credibility and the weight of the evidence produced. Accordingly, as illuminated in the previous footnote, albeit in the context of evidentiary admissibility, there was clearly enough circumstantial evidence tying Black to authorship of the Facebook messages, and he is due no relief.

Therefore, we find no merit to Black's sole contention in this appeal and affirm his judgment of sentence.

Judgment of sentence affirmed.

P.J.E. Bender joins this memorandum.

Judge Kunselman concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/2023

- 8 -