**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAURA FLOYD | : | |
| | : | |
| Appellant | : | No. 965 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 30, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002462-2022

BEFORE: STABILE, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 10, 2025**

Laura Floyd appeals from the judgment of sentence imposed following her convictions for aggravated assault and conspiracy.[1] She challenges the trial court's sustaining of an objection to the admission of Instagram messages for lack of authentication. We affirm.

The trial court aptly summarized the facts as follows:

> This incident arose from disagreement between [Floyd] and 16-year old Morgan Maxwell (hereinafter Morgan) via phone, text messages and social media. Notes of Testimony (hereinafter "N.T."), 09/21/2023 at 96-99.
>
> On the evening of February 21, 2022, Chanaiah Maxwell (hereinafter Chanaiah), saw a group of teenage girls gathered on the porch of her Aunt Marlo Maxwell's (hereinafter Aunt Marlo) home on the 5700 block of N. 2151 Street in Philadelphia, PA. [Floyd] stated: "I'm here to fight Morgan, I want to fight Morgan. Where is Morgan?" Morgan wasn't home and is Chanaiah's 16-year-old cousin and Aunt

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and 903, respectively.

Marlo's daughter. Chanaiah ascended the steps, advised [Floyd] that Morgan "wasn't fighting anyone," and blocked the group from coming closer until they left 2-3 minutes later. N.T. 09/19/2023 at 53-58. Other members of the Maxwell family arrived at the house not long thereafter: Morgan, her sisters Arielle Maxwell (hereinafter Arielle) and Chardonay Maxwell, and then Aunt Marlo. Morgan received "constant phone calls" in reference to fighting [Floyd]. *Id.* at 60-63.

At some point, [Floyd] and Morgan agreed to meet at a nearby Rite Aid parking lot to address their issues. Chanaiah drove Morgan and two others there in her car. Both parties believed they were outnumbered, and no interaction took place, as all individuals stayed with their respective vehicles then drove away. [Floyd] alleged Morgan had a knife on her and it wouldn't have been a "fair fight." The Maxwells retired to Aunt Marlo's home to watch television. *Id.* at 64-66, N.T. 09/20/2023 at 101-102, and N.T. 09/21/2023 at 102-105[.]

[Floyd] returned to the Maxwell house a second time with her friends to fight Morgan, out of "pride." Among her companions, she was accompanied by her girlfriend Trinity Abbott who rode with her in a white Nissan, and Pilar Howard (hereinafter Pilar) who arrived in a separate car. N.T. 09/20/2023 at 125-126, and N.T. 09/21/2023 at 28, 30, 93-125. Aunt Marlo answered the door and told [Floyd] to go home while Arielle followed her outside to banish the others from the front door. As Chanaiah stepped out on the porch to observe the situation, she removed her firearm and hid it behind a bag of gravel. Aunt Marlo was in the yard holding off [Floyd] and the other girls with a broom. The group of teenagers continued to advance, and [Floyd] refused to leave. N.T. 09/19/2023 at 66-70, 119-120. [Floyd] and Pilar contended, however, that Chanaiah subsequently pointed a gun in [Floyd's] direction which led her to put her hands up. N.T. 09/20/2023 at 129, and N.T. 09/21/2023 at 108-112.

Chanaiah saw three males in dark hoodies walk to the house from the opposite side of the street. She watched [Floyd] make eye contact with one of the guys and smile. She then observed: "[The male] put his hands in his hoody pocket, . . . [Floyd] motioned over . . . [with] . . . a head nod from him over to us." Chanaiah next saw "what . . .

look(ed) like the shape of a gun in his hoody." At that point Chanaiah turned to head up the steps because she believed she may need her firearm. N.T. 09/19/2023 at 73-76. [Floyd] suddenly saw a blue beam flash diagonally across her (from the opposite direction). N.T. 09/21/2023 at [13-14].

After Chanaiah turned her back, Arielle watched the male pull a gun from his pocket and point it towards her face with a blue laser beam. She then screamed "he got a gun, don't shoot my mom." Gunshots were heard by all and Chanaiah then felt something "really hot" in her back. N.T. 09/19/2023 at 123-124, 76-77 and N.T. 09/21/2023 at 33, 114.

Trial Court Opinion, filed 7/2/24, at 2-4. (footnote omitted).

During Pilar's testimony at trial, Floyd attempted to introduce four screenshots of Instagram messages and an accompanying audio message on the same platform that Morgan purportedly sent to Floyd shortly before the incident. N.T., 9/20/23, at 106-108. The Commonwealth objected based on lack of authentication. *Id.* at 109. It noted that while there were times on the messages, there were no dates "so there's nothing that says that this is on this particular day that these calls were made[.]" *Id.* The Commonwealth also argued that the messages were from an Instagram account that had not been authenticated and "[t]here's no proof that this account that [Floyd is] saying that this information was sent from Morgan's account belongs to Morgan." *Id.* The trial court agreed with the Commonwealth and precluded the admission of the messages. *Id.* at 115-116. The issue was revisited the following day, and the court reiterated its decision to preclude the messages. N.T., 9/21/23, at 4-20.

Floyd was convicted of the above offenses. The court sentenced her to eight to 16 years' incarceration. Floyd filed a post-sentence motion, which was denied by operation of law. This appeal followed.

Floyd raises the following issue:

> Did the trial judge commit reversible error when she failed to permit the defense to present evidence of various cell phone texts and voicemail audio texts from one of the complainants which would have established that complainant Morgan Maxwell was the aggressor and it was she who requested that [Floyd] come to her house to resolve any issues between them?

Floyd's Br. at 2 (emphasis removed).

Floyd argues that the trial court erred when it precluded the Instagram messages that she sought to introduce. Floyd alleges that the messages were sent to her from Morgan approximately one hour before the incident. *Id.* at 5. Floyd contends that, in those messages, Morgan repeatedly requested for her to come to her house to resolve their ongoing dispute. *Id.* In Floyd's view, "without the admission of these communications from [Morgan] to [Floyd], the jury was erroneously led to believe that [Floyd] was the aggressor who traveled to [Morgan's] home with ill intent to create a disturbance and not at the invitation of [Morgan]." *Id.* at 10. Floyd asserts that the messages were relevant because they "went to the very heart of the level of [her] culpability" and the preclusion of the messages transformed Floyd "from an invitee to an aggressor." *Id.* at 12.

Floyd maintains that she presented the following evidence to authenticate the messages:

- 4 -

(1)  One of the recipients, Pilar Howard, testified that various girls received these texts around one hour prior to the subject incident in question[.]

(2)  Prosecution witness/complainant Arielle Maxwell testified at the preliminary hearing that she witnessed her sister Morgan Maxwell having multiple phone conversations with [Floyd]. This corroborates the testimony of Pilar Howard that there was an exchange of phone communications about one hour prior to the incident.

(3)  The District Attorney admits to having received a copy of the texts and audio prior to trial[.]

(4)  The identification of the sender of the texts was _.1MSK, the screen name of complainant Morgan Maxwell[.]

(5)  The recipient of the texts was both Pilar Howard and [Floyd.]

(6)  The audio was self-authenticating in that complainant Morgan Maxwell's voice was on the . . . audio messages and Pilar Howard was going to attest to the fact that it was the voice of complainant Morgan Maxwell.

(7)  The time stamp on the texts is 9:13 P.M. and, although there is no date on the text, both prosecution witness Arielle Maxwell as well as defense witness Pilar Howard corroborated and confirmed that messages were going back and forth between Morgan Maxwell and [Floyd] and her friends at that same time, including Pilar Howard.

(8)  The audio text file was sent from the same source as the texts, thus linking the voice of Morgan Maxwell with the texts she sent.

*Id.* at 11 (citations omitted). Floyd concludes that the messages should have been admitted at trial. *Id.* at 12.

The admission of evidence is within the discretion of the trial court and will only be reversed where there is an abuse of that discretion. ***See Commonwealth v. Radecki***, 180 A.3d 441, 451 (Pa.Super. 2018). An abuse of discretion exists where the court overrides or misapplies the law or exercises judgment in a way "that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." ***Id.*** (citation omitted).

Authentication is required prior to the admission of evidence. ***See*** Pa.R.E. 901. "[T]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Rule 901(b)(11) specifically addresses the authentication of "digital evidence," which is defined as "a communication, statement, or image existing in an electronic medium," including "emails, text messages, social media postings, and images." Pa.R.E. 901(b)(11), cmt. Rule 901(b)(11) provides:

> **(b) Examples.** The following are examples only—not a complete list—of evidence that satisfies the [authentication] requirement . . .
>
> > (11) *Digital Evidence*. To connect digital evidence with a person or entity:
> >
> > > (A) direct evidence such as testimony of a person with personal knowledge; or
> > >
> > > (B) circumstantial evidence such as:
> > >
> > > > (i) identifying content; or
> > > >
> > > > (ii) proof of ownership, possession, control, or access to a device or account at the

> relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11).

The comments to Rule 901(b)(11) explain that "[t]he proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." Pa.R.E. 901(b)(11), cmt. Circumstantial evidence constituting identifying content "may include self-identification or other distinctive characteristics, including a display of knowledge only possessed by the author." ***Id.*** "Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication of authorship [but such] evidence is probative in combination with other evidence of the author's identity." ***Id.***

As to social media,

> [w]e have also recognized that social media evidence presents challenges for authentication because of the ease with which a social media account may be falsified, or a legitimate account may be accessed by an imposter. However, we have acknowledged that the same uncertainties can exist with other types of evidence, such as written documents where signatures could be forged, or a letterhead copied.

***Commonwealth v. Jackson***, 283 A.3d 814, 818-19 (Pa.Super. 2022) (citations omitted). Thus, "social media records and communications can be properly authenticated within the existing framework of Pa.R.E. 901 and Pennsylvania case law, similar to the manner in which text messages and instant messages can be authenticated." ***Commonwealth v. Mangel***, 181

A.3d 1154, 1162 (Pa.Super. 2018). "Initially, authentication [of] social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity." *Id.* The proponent of social media evidence must then "present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender." *Id.*

Here, the court found that Floyd failed to authenticate the social media messages. It explained:

> [Floyd] did not meet th[e] burden as [s]he failed to authenticate the date, time and source of the social media evidence [s]he sought to introduce. [***Commonwealth v.***] ***Koch***, [39 A.3d 996,] 1004 [(Pa.Super. 2011)]. The documentation provided did not reflect the actual name of the accountholder, a visible photograph, recognizable email account/I.P. address, verifiable phone number or any clear link to the purported individual in question. Further the screenshots did not indicate a month, day or year of occurrence. The exhibits failed to reflect the source of the information as well.[7]

> The trial [c]ourt determined [Floyd] failed to verify the authenticity of the screenshots, messages, and recordings as counsel was unable to provide the following information relevant to the incident: proof of the accountholder and author of messages; confirmation of the date and time the messages were sent or received; and validation of the recipient's account containing the data.[8] Further, without the requested proof of verification, the [c]ourt could not find the information relevant for admission for trial.

> > [7] Counsel offered that the social media communication was sent to [Floyd's phone], but this was not reflected on the documents.

- 8 -

Trial Ct. Op. at 9-10. (emphasis in original).

The court did not abuse its discretion. Floyd failed to produce sufficient evidence to link Morgan's Instagram account with the messages or to show that Morgan sent the specific messages on the date in question. *See Mangel*, 181 A.3d at 1164 (social media account with defendant's name, hometown, and high school was insufficient to authenticate the online and mobile device chat messages as having been authored by defendant).

Moreover, the messages were cumulative. A trial court "may exclude relevant evidence if its probative value is outweighed by a danger of . . . needlessly presenting cumulative evidence." Pa.R.E. 403. The jury heard numerous witnesses, including Floyd, testify that Morgan repeatedly called and messaged Floyd that day to come to her house to fight her. *See* N.T., 9/20/23, at 100, 104-06, 122-23; N.T., 9/21/23, at 29-30, 98-100, 101-02. Thus, the trial court did not err in precluding the messages.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/10/2025

- 9 -