J-S09019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEYONNA DEVAUGHN | : | |
| | : | |
| Appellant | : | No. 1880 EDA 2025 |

Appeal from the Judgment of Sentence Entered June 9, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0003608-2023

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                          **FILED APRIL 14, 2026**

Deyonna DeVaughn ("DeVaughn") appeals from the judgment of sentence imposed following her convictions of abuse of care-dependent person and harassment.[1]  We affirm.

The trial court summarized the following factual history:

> On July 2, 202[3], DeVaughn was employed as a caregiver at an assisted living facility.  DeVaughn and a coworker[, Lehla Brickus ("Brickus"),] confronted the elderly victim for wearing her nightgown over her clothing.  [Brickus] videorecorded the incident on her smartphone (and posted it to social media) showing [Brickus] shoving the smartphone at the victim's face, then pushing the victim's face with the smartphone[.]  The video recording shows DeVaughn jerking the victim's nightgown causing it to partially unbutton, laughing, ordering the victim to remove the nightgown, taunting the victim as if challenging the victim to a fistfight, yelling at the victim to remove the nightgown, then

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2713.1(a)(1)(i), 2709(a)(1).

lunging at the victim and pulling at the victim's nightgown thus unbuttoning it the rest of the way.

Trial Court Opinion, 9/17/25 at 1.[2]

The Commonwealth charged DeVaughn with two counts of abuse of care-dependent person[3] and harassment.[4]

In May 2025, this matter proceeded to a two-day jury trial. The Commonwealth presented the video and witness testimony establishing the following.

Allison Norton ("Norton") was a nurse and an administrator at another assisted living facility. *See* N.T., 5/1/25, at 34. She testified that on July 2, 2023 — the same day the video was posted — an acquaintance showed her a video on the Instagram account of a user named "poohhbankzz," depicting "resident abuse," and asked whether it occurred at her facility. *Id*. at 34, 41. The incident did not occur at her facility, but Norton believed the conduct constituted a "reportable concern." *Id*. at 34. Specifically, Norton testified that, as a "nurse [and administrator, t]he concern was that a resident was being battered and abused in a video, clearly in a nursing home or similar setting." *Id*. at 34. Norton contacted local police and forwarded the video to Chester County District Attorney's Office Detective Steven Parkinson

---

[2] For ease of review, when quoting the trial court's opinion, we have changed the trial court's references to "Defendant" to "DeVaughn."

[3] *See* 18 Pa.C.S.A. § 2713.1(a)(3).

[4] Later, the Commonwealth amended the complaint to add a count of criminal conspiracy to each of the existing charges. We further note the Commonwealth also charged Brickus.

("Detective Parkinson"). The Department of Aging also became involved. Norton identified the video shown at trial as the same video she viewed on July 2, 2023, and testified that it was a fair and accurate depiction of that recording. The Commonwealth moved the video into evidence for identification purposes.

DeVaughn objected to Norton's testimony concerning abuse. At sidebar, DeVaughn argued that whether abuse occurred was an ultimate issue for the jury to decide. DeVaughn requested that the trial court provide a cautionary instruction. The trial court did not expressly rule on the objection but instructed the jury as follows: "[T]o the extent that you heard the witness opine on what she saw on the video, . . . remember that the ultimate question of whether or not abuse occurred is for you to decide." N.T., 5/1/25, at 37. DeVaughn did not move for a mistrial.

Detective Parkinson identified a flash drive containing a video that he received from the Department of Aging on July 4, 2023, originating from an Instagram account. He testified that the video on the flash drive was the same video he had received from both the Department of Aging and Norton. Detective Parkinson described the video as depicting "an elderly woman being harassed and abused by two employees of an assisted living facility." N.T., 5/1/25, at 48–49. Detective Parkinson also described DeVaughn as displaying a "fighting stance" and "aggressive" body language. N.T., 5/2/25, at 42-43. DeVaughn objected, and the trial court overruled the objection. She did not request a curative instruction or move for a mistrial.

Detective Parkinson further testified that the video was posted to the "story" feature of an Instagram account of the user "poohhbankzz." After executing a search warrant on Instagram, the detective determined that this account belonged to Brickus. Detective Parkinson further testified that the video was posted on July 2, 2023, between approximately 3:00 p.m. and 6:00 p.m., and that, through his investigation, he determined that Brickus used her cellular phone to record the video. Detective Parkinson also learned that Brickus was employed at an assisted living facility in Tredyffrin Township, Chester County. Detective Parkinson then forwarded the Instagram video to Kathleen Gillis ("Gillis"), an administrator at the assisted living facility, to assist in identifying the victim and the location of the incident.

Gillis testified to all of the following. She was the general manager of the assisted living facility. On July 4, 2023, she received a telephone call from a detective requesting that she review a video. Gillis did and testified that it was recorded at the assisted living facility. She recognized the carpet, a medical cart, the wall, and the décor shown in the video. Gillis identified the victim and DeVaughn and recognized Brickus' voice in the video, and testified that the video fairly and accurately represented their appearances, Brickus' voice, and the assisted living facility on July 2, 2023. She further testified that both DeVaughn and Brickus were working at the facility on the date the video was recorded.

The Commonwealth moved to admit the video into evidence, and DeVaughn objected. At sidebar, she argued that the Commonwealth failed to

authenticate the video because Gillis did not testify that she observed the victim, DeVaughn, and Brickus at the assisted living facility on the date of the incident. DeVaughn further requested the opportunity to cross-examine Gillis prior to the admission of the video.

The trial court suggested that the Commonwealth elicit additional foundational testimony. In response, the prosecutor argued that further testimony was unnecessary, asserting that Gillis' familiarity with the individuals and the facility, her identification of Brickus' voice, and other circumstantial evidence — including Detective Parkinson's testimony regarding the Instagram account, the posting of the video, and search warrants linking Brickus to the account — established authentication under the totality of the circumstances pursuant to Pennsylvania Rule of Evidence 901.

DeVaughn maintained the objection, contending that the Commonwealth had failed to lay a sufficient foundation because Gillis did not testify that she was present at the facility on July 2, 2023, observed the individuals on that date, or witnessed the events depicted in the video. The trial court overruled the objection and permitted the Commonwealth to publish the video to the jury.

The Commonwealth later recalled Detective Parkinson and asked whether the victim was "still with us." N.T., 5/2/25, at 44–45. Detective Parkinson responded that the victim died in September 2023, approximately two months after the video. DeVaughn objected. The trial court questioned

- 5 -

the relevance of the testimony and asked whether the Commonwealth wished to proceed, whereupon the Commonwealth indicated it had no further questions. DeVaughn then moved for a mistrial, arguing that the testimony regarding the victim's death was unduly prejudicial and that no curative instruction could remedy the harm. DeVaughn declined the trial court's offer to provide a curative stipulation. The Commonwealth responded that it elicited the testimony to explain "why the jury will not be hearing from [] the victim in the case." N.T., 5/2/25, at 85.

The trial court denied DeVaughn's motion for a mistrial, explaining that the jury would not draw an improper inference that DeVaughn's conduct caused the victim's death. Further, the trial court noted that the Commonwealth had

> asked [Detective] Parkinson if [the victim] had passed away, he said yes, [the Commonwealth] asked when, and there was an objection, which [the court] sustained, because her passing is really not relevant to this case. . . .
>
> * * * *
>
> . . . There was not an objection to the question of whether she passed. That question stood. . . .

*Id*. at 89-90. The trial court then repeated its offer to provide a curative instruction or stipulation to mitigate any potential prejudice, but DeVaughn declined and elected to address the issue through cross-examination.

DeVaughn testified in her own defense to the following. She was not friends with Brickus, did not know she was recording that day, and did not

- 6 -

give her permission to record her. DeVaughn denied that she was laughing and explained that she attempted to remove the victim's nightgown, which the victim wore over her clothing. She testified that her actions were part of assisting the victim, not engaging in any inappropriate conduct.

At the conclusion of trial, the jury found DeVaughn guilty of one count of abuse of care-dependent person. The trial court, sitting as factfinder, separately found DeVaughn guilty of harassment. On June 9, 2025, the trial court imposed a sentence of seven days to one year's incarceration, followed by one year's consecutive probation.

DeVaughn filed a motion to stay execution of sentence pending the outcome of this appeal and a timely post-trial motion. The trial court granted the motion to stay execution of sentence, but denied the post-sentence motion. DeVaughn filed a timely notice of appeal. Both she and the trial court complied with Pa.R.A.P. 1925.

On appeal, DeVaughn raises the following issues for our review:

1. Whether the trial court erred and abused its discretion in allowing the Commonwealth to present the Instagram video to the jury as it violated Pa.R.E. 901 and Pennsylvania decisional case law?

2. Whether the trial court erred and abused its discretion in allowing the Commonwealth witnesses to opine and testify [DeVaughn's] conduct as shown in the Instagram video was elder care abuse, as it invaded the province of the jury and was the ultimate issue in the case and a matter for the jury to decide?

3. Whether the trial court erred and abused its discretion in allowing the Commonwealth to elicit testimony from . . .

Detective Parkinson . . . that the [victim] passed away after the alleged incident where [DeVaughn] was accused of the various crimes regarding abuse of care-dependent person, subjects, attempts, or threatens physical contact?

4. Whether the trial court erred and abused its discretion in failing to grant [DeVaughn] a mistrial which she requested as a result of improper evidence relating to the victim's death that the Commonwealth elicited during the trial and [DeVaughn] was without any way to cure prejudice of that evidence, at trial, and failing to give the jury a curative instruction concerning the fact that [DeVaughn] was not the cause of death of the victim and the allegations made against her by the Commonwealth had nothing to do with the victim's death?

DeVaughn's Brief at 3-4 (unnecessary capitalization omitted).

In DeVaughn's first issue, she argues that the trial court abused its discretion in admitting the Instagram video in violation of Pennsylvania Rule of Evidence 901. It is well settled that:

When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Jackson***, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted).

A party must authenticate evidence before the court may admit it. ***See id***. at 818 (citation omitted). Authentication imposes a low burden, requiring only "evidence sufficient to support a finding that the item is what the

proponent claims it is." Pa.R.E. 901(a); *see also Jackson*, 283 A.3d at 818

(*citing **Commonwealth v. Mangel***, 181 A.3d 1154, 1160 (Pa. Super. 2018)).

For digital evidence, a party may establish authentication through either

"direct evidence[ — ]such as testimony of a person with personal knowledge"

— or circumstantial evidence. Pa.R.E. 901(b)(11)(A)-(B). Notably, this Court

has held that the proponent may provide authentication testimony by the

person who created the video, or by "[a] witness familiar with the subject

matter can testify that the tape was an accurate and fair depiction of the

events sought to be shown." ***Commonwealth v. Impellizzeri***, 661 A.2d

422, 428 (Pa. Super. 1995).

"Even though the court rules that evidence is admissible, this does not

preclude a party from offering other evidence relevant to the weight or

credibility of that evidence." Pa.R.E. 104(e).

These same principles apply to social media evidence, which this Court

evaluates on a case-by-case basis. As this Court has explained:

> [T]he proponent of social media evidence must present direct or
> circumstantial evidence that tends to corroborate the identity of
> the author of the communication in question, such as testimony
> from the person who sent or received the communication, or
> contextual clues in the communication tending to reveal the
> identity of the sender. Other courts examining the authentication
> of social media records have ruled that the mere fact that an
> electronic communication, on its face, purports to originate from
> a certain person's social networking account is generally
> insufficient, standing alone, to authenticate that person as the
> author of the communication.

***Jackson***, 283 A.3d at 819 (citation omitted).

DeVaughn argues that the Commonwealth failed to establish a proper foundation to authenticate the Instagram video. DeVaughn contends that the Commonwealth did not call Brickus, the individual who recorded and posted the video, to testify, and therefore did not establish when or how she created the video or whether she had altered or manipulated it. DeVaughn further asserts that the Commonwealth's witnesses — Norton, Detective Parkinson, and Gillis — lacked personal knowledge regarding "who, in addition to [Brickus], participated in the creation of the video, when the video was created, how the video was created, and whether . . . portions of the video images consisted of memes or other fictional images." DeVaughn's Brief at 8. DeVaughn also claims that Gillis "never testified to [the] authenticity of the video and was not able to testify concerning the chain of custody of the video." *Id*. at 11. Finally, DeVaughn contends that the mere association of the video with a social media account was insufficient to establish authenticity under *Mangel*, and therefore the trial court erred in admitting the video into evidence.

The trial court concluded that DeVaughn's claim lacked merit. The trial court cited Pa.R.E. 901(b)(11), noting that a party may authenticate digital evidence through either direct or circumstantial evidence, including identifying content or proof of ownership or control of an account. The trial court further reasoned that the video was admissible because the Commonwealth offered it as evidence of DeVaughn's conduct, and not to prove who posted it on social media. The court stated that the Commonwealth properly authenticated the

video through witness testimony establishing that it was an accurate depiction of the events on the date in question.

Upon review, we discern no abuse of discretion. *See Jackson*, 283 A.3d at 817. The Commonwealth presented sufficient direct and circumstantial evidence to satisfy the low burden of authentication under Pa.R.E. 901. Detective Parkinson's investigation revealed that Brickus recorded the video on her cellular phone. Further, the video was posted to the Instagram account "poohhbankzz," which belonged to Brickus, between approximately 3:00 p.m. and 6:00 p.m. on July 2, 2023. Gillis testified that both DeVaughn and Brickus were working at the assisted living facility that day, identified DeVaughn and the victim in the video, recognized Brickus' voice, and confirmed that the video accurately depicted their appearances, Brickus' voice, and the facility on that date. Additionally, both Norton and Detective Parkinson testified that the video admitted at trial was the same video they had reviewed shortly after Brickus posted it.

This evidence, viewed collectively, established distinctive characteristics of the video — including the identity of the individuals depicted, the location, and the voice of the person recording — as well as its connection to Brickus and the relevant timeframe. Accordingly, the trial court did not err in concluding that the Commonwealth met its burden under Rule 901.

Contrary to DeVaughn's claim, the Commonwealth did not need to present the creator of the video to establish authenticity. *See Impellizzeri*, 661 A.2d at 428. Likewise, the Commonwealth was not required to

conclusively establish that the video had not been altered or manipulated; such challenges go to the weight of the evidence, not its admissibility. *See* Pa.R.E. 104(e).

Moreover, the Commonwealth presented more than mere attribution of the video to a social media account alone. In addition to linking the "poohhbankzz" account to Brickus, the Commonwealth introduced testimony identifying the individuals depicted, recognizing Brickus' voice, confirming that DeVaughn and Brickus were working at the facility at the relevant time, and establishing that the video admitted at trial was the same video viewed shortly after Brickus posted it. These corroborating circumstances satisfied the requirements set forth in Jackson. Accordingly, the trial court did not err in concluding that the Commonwealth satisfied its low burden of authentication. Therefore, DeVaughn's first claim merits no relief.

In DeVaughn's second issue, she contends that the trial court abused its discretion by allowing Commonwealth witnesses to offer opinions characterizing her conduct in the Instagram video as elder abuse. When reviewing a trial court's ruling on the admission of evidence, we apply an abuse of discretion standard. *See Jackson*, 283 A.3d at 817.

A lay witness may offer opinion testimony if it is "rationally based on the witness's perception" and "helpful to clearly understand the witness's testimony or to determining a fact in issue." Pa.R.E. 701(a)-(b); *see also Commonwealth v. Huggins*, 68 A.3d 962, 967 (Pa. Super. 2013) (explaining that lay opinion testimony is permissible where it is based on the

witness' perceptions). "An opinion is not objectionable just because it embraces an ultimate issue." Pa.R.E. 704.

Where a trial court sustains an objection and issues a curative instruction, the failure to move for a mistrial results in waiver. *See **Commonwealth v. Garcia***, 479 A.2d 473, 479 n.5 (Pa. 1984) (citations omitted); *see also* Pa.R.Crim.P. 605(B) (providing that "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed[; and o]therwise, the trial judge may declare a mistrial only for reasons of manifest necessity").

DeVaughn argues that the trial court abused its discretion by permitting Commonwealth witnesses to characterize her conduct in the Instagram video as elder abuse. DeVaughn contends that such testimony constituted improper opinion evidence that invaded the province of the jury by addressing the ultimate issue in the case — whether her conduct constituted abuse of a care-dependent person.

The trial court concluded that DeVaughn's claim lacked merit. The trial court permitted the challenged testimony but took differing approaches for each witness. When Norton characterized the conduct as abuse, the trial court sustained DeVaughn's objection and issued a curative instruction directing the jury that the ultimate determination of whether abuse occurred rested solely with it. DeVaughn did not request a mistrial.

We conclude that, to the extent DeVaughn challenges Norton's testimony, she has waived this claim. ***See Garcia***, 479 A.2d at 479 n.5. The trial court sustained the objection and issued a curative instruction, and DeVaughn did not move for a mistrial. Under such circumstances, DeVaughn preserved only a challenge to the adequacy of the curative instruction. ***See id***.; ***see also Page***, 965 A.2d at 1222.

With respect to Detective Parkinson, the trial court overruled DeVaughn's objection and permitted him to testify regarding his observations of the video. Specifically, Detective Parkinson stated that DeVaughn appeared to display "aggressive" body language, assumed a "fighting stance," and that the video "appeared to show an elderly woman being harassed and abused by two employees of an assisted living facility." N.T., 5/1/25, at 48–49; ***see also*** N.T., 5/2/25, at 42–43.

To the extent DeVaughn challenges Detective Parkinson's testimony, we discern no abuse of discretion. ***See Jackson***, 283 A.3d at 817. Detective Parkinson's statements regarding DeVaughn's "aggressive" body language and "fighting stance" were rationally based on his perception of the video and were helpful to the jury's understanding of the events depicted. ***See*** Pa.R.E. 701(a)-(b).

Detective Parkinson also testified that the video "appeared to show" abuse, framing his statement as an observation rather than a definitive legal conclusion. ***See*** Pa.R.E. 701(a)-(b); ***see also Huggins***, 68 A.3d at 967. Moreover, the jury viewed the video itself and was free to independently

- 14 -

assess whether DeVaughn's conduct constituted abuse. The challenged testimony did not usurp the jury's role as factfinder or direct the jury to reach a particular verdict. *See* Pa.R.E. 704; see also ***Huggins***, 68 A.3d at 967. Because the trial court either cured the challenged testimony or properly admitted it as permissible lay opinion, DeVaughn's second claim merits no relief.

We will address DeVaughn's third and fourth issues together as they are related. DeVaughn claims in her third issue that the trial court abused its discretion by allowing the Commonwealth to elicit testimony from Detective Parkinson that the victim died after the incident. DeVaughn maintains that her charges were unrelated to the victim's death. DeVaughn argues in her fourth issue that the trial court abused its discretion by denying her motion for a mistrial based upon the admission of Detective Parkinson's testimony regarding the victim's death. As previously stated, we review a trial court's ruling on the admission of evidence for abuse of discretion. ***See Jackson***, 283 A.3d at 817.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). However, a "court may exclude relevant evidence if its probative value is outweighed by" the danger of unfair prejudice. ***See*** Pa.R.E. 403. Evidence is unfairly prejudicial if it tends "to suggest [a] decision on an improper basis or to divert

the jury's attention away from its duty of weighing the evidence impartially."
***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007).

A satisfactory explanation for not calling a witness precludes a missing witness instruction. ***See Commonwealth v. Miller***, 172 A.3d 632, 646 (Pa. Super. 2017); ***see also id***. (setting forth the missing witness adverse inference rule as follows: "When a potential witness is available to only one of the parties to a trial, [] it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable").

Our standard of review in assessing the denial of a mistrial is as follows:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

***Commonwealth v. Kearney***, 341 A.3d 774, 783–84 (Pa. Super. 2025) (citation omitted).

As noted above, Pennsylvania Rule of Criminal Procedure 605 provides: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event

is disclosed.  Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity."  Pa.R.Crim.P. 605(B).

In her third issue, DeVaughn argues that the trial court abused its discretion by allowing the Commonwealth to elicit testimony that the victim died after the incident.  DeVaughn contends that the evidence was irrelevant to the charged offenses and, even if marginally relevant, was unduly prejudicial because it invited the jury to base its decision on sympathy and implied a connection between her conduct and the victim's death.  DeVaughn maintains that this prejudice warranted a mistrial.

In her fourth issue, DeVaughn argues that the trial court abused its discretion by denying her motion for a mistrial after the Commonwealth elicited testimony from Detective Parkinson that the victim had died. DeVaughn maintains that the testimony was so prejudicial that no curative instruction could have remedied the harm.  According to DeVaughn, the trial court further erred by failing to instruct the jury that she did not cause the victim's death and that the charges were unrelated to it.

The trial court determined that DeVaughn's claims of error lack merit. *See* Trial Court Opinion, 9/17/25, at 3-4.  In denying DeVaughn's motion for a mistrial, the court explained that based on the video and testimony presented, the jury would not have drawn an improper inference that DeVaughn's conduct caused the victim's death.  The trial court further noted that it sustained the objection to the Commonwealth's follow-up question regarding the circumstances of the victim's death, while DeVaughn did not

- 17 -

object to the initial question of whether the victim had passed away. **See** N.T., 5/2/25, at 89–90. Further, the trial court offered to provide a curative instruction or stipulation to mitigate any potential prejudice, but DeVaughn declined and elected to address the issue through cross-examination. **See** N.T., 5/2/25, at 89–90; **see also** Trial Court Opinion, 9/17/25, at 3.

We discern no abuse of discretion. **See Kearney**, 341 A.3d at 783–84; **see also Jackson**, 283 A.3d at 817. Although the testimony that the victim had died was of limited relevance to the charged offenses, it was brief and not emphasized by the Commonwealth. The Commonwealth did not attempt to link the victim's death to DeVaughn's conduct or suggest that she bore any responsibility for it. Accordingly, the isolated reference did not have the unavoidable effect of depriving DeVaughn of a fair trial, and the trial court reasonably concluded that the jury would not draw any improper inference from it.

Moreover, the Commonwealth offered a permissible explanation for eliciting the testimony — namely, to explain why the victim did not testify at trial. **See Miller**, 172 A.3d at 646. The trial court also sustained the objection to further questioning regarding the circumstances of the victim's death.

Importantly, the trial court offered to provide a curative instruction or stipulation — including one expressly clarifying that the Commonwealth did not connect DeVaughn's conduct to the victim's death — but DeVaughn declined. Under these circumstances, any potential prejudice was not so unavoidable as to deprive DeVaughn of a fair trial, and she cannot now obtain

relief based on the absence of a curative instruction that she refused. Because the trial court could have cured any potential prejudice with a cautionary instruction, it did not abuse its discretion in admitting the testimony or in declining to grant the extreme remedy of a mistrial. Accordingly, DeVaughn's third and fourth claims merit no relief.

For all of the foregoing reasons, DeVaughn is not entitled to relief, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/14/2026