J-A18043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.D.M.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.E., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 544 EDA 2025 |

Appeal from the Decree Entered February 3, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000203-2024

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED AUGUST 1, 2025**

S.E. ("Mother") appeals from the decree entered by the Philadelphia County Court of Common Pleas ("family court") granting the petition of Philadelphia Department of Human Services ("DHS") to terminate her parental rights to I.D.M.A. ("Child") pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act.[1]  Because the family court did not abuse its discretion or err as a matter of law, we affirm.

Child was born in July 2022.  In August 2022, following the investigation of a report concerning Child's welfare, DHS determined that Mother was abusing drugs and experiencing housing instability, difficulties with her mental health, and domestic violence perpetrated by Father.  N.T., 2/3/2025, at 6.

---

[1] The family court also terminated the parental rights of Child's father, D.A. ("Father").  Father did not file an appeal.

Based upon DHS's concern that these issues interfered with Mother's ability to care for Child, DHS sought and received permission to remove Child from Mother's care in September 2022 and placed her in kinship care with her maternal great aunt. *See id.* at 8, 16-17. The juvenile court adjudicated Child dependent and committed her to the custody of DHS. *Id.* at 8.

At the inception of the dependency case, DHS established parental objectives for Mother to complete, including undergoing a drug and alcohol assessment, submitting to random drug screens, completing parenting education and domestic violence counseling, maintaining employment, and acquiring suitable housing. *See id.* at 9. On May 22, 2024, after Child had been in care for approximately twenty months, DHS filed a petition to terminate Mother and Father's parental rights pursuant to sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. At the February 3, 2025 hearing,[2] DHS presented the testimony of Terrance Molock ("Molock"),

---

[2] Child was represented at the termination hearing by Attorney Patricia Cochran, who was Child's guardian ad litem ("GAL") during the dependency proceedings. Attorney Cochran represented both Child's best and legal interests at the termination hearing. Because Child was just over two years old at the time and without a discernible position, there was no need for the family court to make a determination as to whether this dual role presented a conflict of interest. *See In re. T.S.*, 192 A.3d. 1080, 1092 (Pa. 2018) (finding that where the child's preferred outcome is unverifiable because of a child's young age, no conflict of interest exists between the child's legal and best interests for purposes of attorney representation of the child at termination proceedings); *see also In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020) ("where an orphan's court has appointed a GAL/[c]ounsel to represent both the child's best interests and legal interests, appellate courts should

*(Footnote Continued Next Page)*

a case manager assigned to the family's case. *See* N.T., 2/3/2025, at 6, 8. In addition to the history discussed above, Molock testified that DHS established the parental objectives to address the concerns it had when Child came into care, that it referred Mother to the necessary services to complete the objectives, and that DHS made Mother aware that progress in these objectives was necessary for reunification with Child. *Id.* at 9. According to Molock, however, Mother failed to comply with these objectives or otherwise address the issues that brought Child into care. *See id.* at 9-15.

Molock stated that there is no verification that Mother obtained safe and appropriate housing, there is a continuing concern of exposure to domestic violence because Mother did not undergo counseling and admitted to intermittently residing with Father, and Mother has taken no action to address her mental health issues. *Id.* at 13-16. Molock also testified that Mother admitted to using PCP and that she failed to attend drug screens or any drug treatment programs, other than entering a detoxification program at Gaudenzia, a substance abuse rehabilitation program, in August 2024, which was after DHS filed the termination petition. *Id.* at 10. Further, Molock testified that throughout 2024 and 2025 to the date of the hearing, Mother visited Child only three times out of approximately fifty-six opportunities provided to her. *Id.* at 14-15. Molock provided additional commentary on

_____

review sua sponte whether the [family] court made a determination that those interests did not conflict.").

the nature of Mother's ability to care for Child and stated that Mother has not been involved in meeting Child's medical, financial, or general needs since she entered DHS's care. *Id.* at 18-20.

Mother briefly testified on her own behalf, acknowledging that she had used drugs in the past but contending that she had been clean for five months. *Id.* at 29. Mother attempted to present the testimony of Aaron Harris ("Harris"), who is a program director at Gaudenzia. After Harris testified that Mother began Gaudenzia's program in August 2024, however, DHS objected to further testimony on grounds of relevance, as Mother initiated treatment after the filing of the termination petition, and the family court sustained DHS's objection. *See id.* at 23-26.

Following the hearing, the family court terminated Mother's parental rights under each subsection included in DHS's termination petition. Mother filed a timely appeal and a concise statement of matters complained on appeal pursuant to Pa.R.A.P. 1925(b).

Mother presents the following issues for our review:

1.  Whether the [family] court erred in terminating Mother's parental rights under 23 Pa.C.S. section 2511(a)(1), the evidence having been insufficient to establish a settled purpose relinquishing parental claim, or having refused or failed to perform parental duties[?]

2.  Whether the [family] court erred in terminating Mother's parental rights under 23 Pa.C.S. section 2511(a)(2), the evidence having been insufficient to establish Mother caused Child to be without essential parental care, nor could that not have been remedied[?]

- 4 -

3. Whether the [family] court erred in terminating Mother's parental rights under 23 Pa.C.S. section 2511(a)(5), the evidence having been insufficient to establish conditions having led to placement continued to exist, nor could not have been remedied[?]

4. Whether the [family] court erred in terminating Mother's parental rights under 23 Pa.C.S. section 2511(a)(8), the evidence having been insufficient to establish conditions having led to placement continued to exist[?]

5. Whether the [family] court erred in terminating Mother's parental rights under 23 Pa.C.S. section 2511(b), the evidence having been insufficient to establish termination of parental rights would best serve the needs and welfare of the Child[?]

6. Whether the [family] court's decision under above sections 2511(a)(1), (a)(2), (a)(5), (a)(8), and 2511(b) inclusively, is submitted as having been contrary to the weight of the evidence[?]

7. Whether the [family] court erred in permitting into evidence the documents pertaining to all the prior dependency court orders, those not having been certified[?]

8. Whether the [family] court erred in denying the admission into evidence the testimony of a material witness, the program director from Gaudenzia a one Aaron Harris, who had come to court on behalf of Appellant[?]

Mother's Brief at 5-6 (issues reordered).

**Termination of Parental Rights**

Mother's first five issues challenge the sufficiency of the evidence to support the family court's decision to terminate her parental rights under section 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) of the Adoption Act. When reviewing a challenge to a decree terminating parental rights, we are mindful of the following:

Termination of parental rights is among the most powerful legal remedies that the judicial system possesses. The decision to sever permanently a parent's relationship with a child is often bound up in complex factual scenarios involving difficult family dynamics and multiple service providers. Our [family] courts are tasked with carefully considering and weighing all of the evidence presented at termination hearings in determining whether the petitioning party has met its burden of proving by clear and convincing evidence that termination meets the exacting standards outlined in the Adoption Act.

Because [family] courts are on the front lines assessing the credibility of witnesses and weighing competing and often challenging evidence, it is paramount that, in reviewing [family] courts' decisions in this arena, appellate courts defer to [family] courts' first-hand observations as they relate to factual determinations. In this regard, we reiterate that appellate courts must review such decisions for an abuse of discretion or error of law, and appellate courts may reverse [family] courts only when that discretion has been breached or when the law has been misapplied. In other words, an appellate court should review the certified record to decide whether it supports the [family] court's order, regardless of whether the appellate court agrees with the result that the [family] court reached.

*Interest of S.K.L.R.*, 256 A.3d 1108, 1129 (Pa. 2021). Our Supreme Court has often "emphasized our deference to [family] courts," but has also acknowledged that "we must employ a broad, comprehensive review of the record in order to determine whether the [family] court's decision is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021) (citations omitted).

Termination of parental rights requires a bifurcated analysis under 23 Pa.C.S. § 2511. *Id.* "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated

in section 2511(a)." ***In re C.M.K.***, 203 A.3d 258, 261-62 (Pa. Super. 2019). If the family court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the evidence presented under section 2511(b), which focuses on the child's needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In Interest of J.M.***, 166 A.3d 408, 423 (Pa. Super. 2017) (citation omitted).

Because "[t]his Court may affirm the [family] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)," ***In re J.F.M.***, 71 A.3d 989, 992 (Pa. Super. 2013), we focus our analysis on section 2511(a)(8) of the Adoption Act.

Mother argues DHS failed to meet its burden under section 2511(a)(8) because the concerns about her ability to parent stemmed from her drug addiction, and despite her continued struggles "pretty much throughout the life of the case[,] it would presently appear" that she had "succeeded in making a significant turnaround." ***See*** Mother's Brief at 13. Mother highlights her completion of the drug detoxification program at Gaudenzia and contends that her testimony regarding her five-month period of sobriety is credible because she has always "been openly frank in fessing up to her prior use." ***Id.***

Section 2511(a)(8) provides for termination of parental rights under the following circumstances:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8). Thus, to terminate parental rights under section 2511(a)(8), the petitioner must prove: (1) the child has been removed from parental care for 12 months or more; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *Id.*; *In re C.L.G.*, 956 A.2d 999, 1008-9 (Pa. Super. 2008) (en banc). Notably, this subsection "does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children." *Interest of M.E.*, 283 A.3d 820, 832 (Pa. Super. 2022). Rather, the "relevant inquiry regarding the second prong of [section] 2511(a)(8) is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *Id.* (quotation marks and citation omitted). Further, "the court shall not consider any efforts by the parent to remedy the conditions described [in section 2511(a)(8)] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

Our review of the record supports the family court's findings as to the first two prongs of subsection (a)(8). In support of subsection (a)(8)'s first prong, Molock testified that DHS removed Child from Mother's care in September of 2022 and that Child has remained in kinship care consistently throughout the life of this case. N.T., 2/3/2025, at 17. At the time of the filing of the termination petition, in May 2022, Child had therefore been in care for approximately twenty months.

In support of the second prong under subsection (a)(8), the record reflects that Child came into care because of concerns about domestic violence between Mother and Father, and Mother's drug use, unstable housing, and mental health issues. *Id.* at 8. At the hearing, DHS established that Mother had not abated any of the concerns that brought Child into care. According to Molock, Mother admitted to actively using PCP and having problems maintaining her sobriety as late as June 2024. *Id.* at 9-10. Mother only submitted to three drug screens throughout the time Child was in care and admitted that it was because she would not be clean. *Id.* at 11-12. Additionally, Mother did not attend domestic violence counseling sessions, and she remains in contact, and intermittently resides, with Father, a perpetrator of domestic violence against her. *Id.* at 13. She further failed to obtain mental health treatment, complete parenting classes, or establish safe and appropriate housing for Child. *Id.* at 11-15.

Mother's sole focus on her substance abuse ignores that there were three other conditions that brought Child into care and that DHS established that she did not address these struggles with mental health, housing stability, and exposure to domestic violence. Additionally, even assuming Mother was, in fact, clean following her completion of the August 2024 detoxification program, until the February 2025 hearing, DHS filed the termination petition in May of 2024 and the period of reviewable parental conduct for a termination under subsection (a)(8) does not include conduct that occurred after termination petitions were filed. **See** 23 Pa.C.S. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."); **see also In re D.W.,** 856 A.2d 1231, 1234 (Pa. Super. 2004). Mother did not comply with her objectives or make any progress in addressing the conditions that brought Child into care for nearly two years, and unfortunately, her recent efforts to address her drug abuse after the filing of the termination petition came too late for the family court to consider them.[3] Subsection (a)(8) reflects the General Assembly's refusal to subordinate a

_____

[3] Even if it had considered her belated efforts, "a parent's progress toward remedying the conditions is insufficient, as a matter of law, to warrant a finding in favor of the parent under the second prong of subsection (a)(8)." **In re: Adoption of G.W.**, __ A.3d __, 2025 WL 2025756 , *11 (Pa. Super. 2025) (en banc) (citation and quotation marks omitted).

"child's need for permanence and stability to a parent's claims of progress and hope for the future" after twelve months has elapsed. *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

We therefore conclude that the record supports the family court's determination that Mother largely has not addressed, let alone remedied, the concerns that resulted in Child's removal from her care—namely, her ability to safely parent and care for Child and to provide her with a healthy and stable living environment. *See A.R.*, 311 A.3d at 1112. As such, we conclude that the family court did not err or abuse its discretion in determining that DHS proved the first two prongs of section 2511(a)(8).

We next consider whether the record supports the family court's conclusion that there was clear and convincing evidence to terminate Mother's rights pursuant to the third prong of subsection (a)(8) and subsection (b).[4]

Section 2511(b) provides:

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

_____

[4] Although separately enumerated, this Court has interpreted the needs and welfare analyses required under subsections (a)(8) and (b) to utilize the same legal standards and to be based upon the same evidence. *See id.* at *13 n.20.

- 11 -

23 Pa.C.S. § 2511(b).

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted). It is not enough that there exists a bond between parent and child to avoid termination. *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). Rather, the family court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at 1105-06. Focusing upon the "child's development, and mental and emotional health," the family court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id.* at 1110-11.

Additionally, "the parental bond is but one part of the overall subsection (b) analysis[.]" *Id.* at 1113. The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible

needs of love, comfort, security, safety, and stability." *Id.* (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." *Id.* Importantly, "[family] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

Thus, a court must examine the matter from the child's perspective, placing his or her "developmental, physical, and emotional needs and welfare above concerns for the parent." *Id.* at 1105. "[T]he law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved." *T.S.M.*, 71 A.3d at 268-69. The party seeking termination bears the burden of proving, by clear and convincing evidence, that termination of parental rights serves a child's needs and welfare. *K.T.*, 296 A.3d at 1105.

Mother argues that because her conduct does not warrant termination of her parental rights, the second part of the bi-furcated analysis is inapplicable, and the family court should not have proceeded to address the needs and welfare prongs of subsection (a)(8) and subsection (b). Mother's Brief at 15. Mother nonetheless concedes that Child has been with her current caregiver for most of her young life and is "thriving very well." *Id.*

Molock stated Child shares a bond with D.P., her maternal great aunt, who has cared for Child for most of her life. N.T., 2/3/2025, at 17-18. D.P. provides Child with love, safety, and stability and meets her medical and emotional needs. *Id.* at 17, 18. Molock further testified that there is no basis to find that Child would experience irreparable harm should Mother's parental rights be terminated. *Id.* at 18. Molock emphasized Mother does not meet Child's needs. *Id.*

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the family court's conclusion that, given Child's removal from Mother as a very young infant and Mother's failure to visit Child as she aged into toddlerhood more than a small handful of times, Child does not share a "necessary and beneficial bond" with Mother and that Child will not be irreparably harmed by terminating Mother's parental rights. *See K.T.*, 296 A.3d at 1113. As Mother implicitly concedes in her brief, Child is bonded to D.P. and D.P. is dedicated to meeting her needs. *See id.* at 1114. Thus, we conclude that the family court did not err or abuse its discretion in determining that Child's developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights, satisfying both the third prong of subsection (a)(8) and subsection (b).

## Weight of the Evidence

Mother argues because her testimony that she was sober for five months at the time of the hearing was credible, the family court's decision to terminate

her parental rights for continuing drug use is contrary to the weight of the evidence. Mother's Brief at 13, 17. At the outset, we note that it is the role of the family court, not this Court, to determine credibility and we may not reweigh the evidence on appeal. *See In re N.A.M.*, 33 A.3d 95, 99 (Pa. Super. 2011) (noting as the trier of fact, the family court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence). Moreover, Mother's credibility regarding her recent sobriety is not dispositive. As we addressed in our analysis above, Mother's recent sobriety is not entitled to any weight in a subsection (a)(8) analysis. *See* 42 Pa.C.S. § 2511(a)(8), (b). Accordingly, no relief is due.

**Challenges to the Admission of Evidence**

Mother next presents two challenges to the family court's evidentiary rulings at the hearing. Our standard of review of a challenge to the admissibility of evidence is well settled:

> The admission of evidence is a matter vested within the sound discretion of the [family] court, and such a decision shall be reversed only upon a showing that the [family] court abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Wilson v. Smyers*, 284 A.3d 509, 514 (Pa. Super. 2022) (citations and quotation marks omitted).

Introduction of Prior Dependency Orders

Mother argues that the family court improperly admitted into evidence fifteen uncertified court orders from Child's dependency matter as "Exhibit 1" in violation of Pa.R.E. 902(4). Mother's Brief at 16. She contends that the family court erred by admitting the uncertified court orders into evidence because DHS failed to authenticate the court orders. Mother's Brief at 16.

"Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). "Generally, authentication requires a low burden of proof." *Commonwealth v. Jackson*, 283 A.3d 814, 818 (Pa. Super. 2022). Nevertheless, the threshold inquiry of authentication must be satisfied prior to admission of any evidence. *Commonwealth v. Mangel*, 181 A.3d 1154, 1158-59 (Pa. Super. 2018). The party introducing the evidence may establish its authenticity through the testimony of a witness with knowledge that "the item is what it is claimed to be." Pa.R.E. 901(b)(1). Alternatively, the party may establish the authenticity of the evidence through other methods provided by Rule 901(b), such through authentication or identification allowed by a statute or rule promulgated by our Supreme Court. Pa.R.E. 901(b)(10).

To this end, Rule 902 states the following, in relevant part:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

\* \* \*

**(4) Certified Copies of Public Records.** A copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by:

> (A) the custodian or another person authorized to make the certification; or

> (B) a certificate that complies with Rule 902(1), (2), or (3), a federal statute, or a rule prescribed by the Supreme Court.

Pa.R.E. 902(4).

Pennsylvania's statute governing the admissibility of official records into evidence, including court orders, provides the following:

**§ 6103. Proof of official records.**

> **(a) General rule.--**An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is kept, authenticated by the seal of that office, or if there is no such officer, by:

> \* \* \*

> (2) The clerk of the court of common pleas of the judicial district embracing any county in which the government unit has jurisdiction, in the case of any government unit other than a Commonwealth agency.

42 Pa.C.S. § 6103(a)(2). The purpose of section 6103 is to provide a method to introduce official records "without the need for bringing the records

custodian into court to authenticate the records." ***Thorne v. Dep't of Transp.,*** 727 A.2d 1205, 1207 (Pa. Cmwlth. 1999).

Here, Mother's counsel objected to the introduction of the uncertified court orders at the hearing on the grounds that DHS did not establish their authenticity. N.T., 2/3/2025, at 22. In response, DHS argued that the orders were authentic because the family court judge presiding over the termination hearing also had presided over Child's dependency proceedings, as reflected by the judge's signature on the copies of the dependency orders. ***Id.*** The family court overruled the objection without a stated reason at the hearing. ***Id.*** In its written opinion, the family court asserted that it did not err by admitting the uncertified court orders based upon the "business record exception" to hearsay because, as the presiding judge of Child's dependency, the family court constituted a "qualified witness" who served to authenticate the documents pursuant to Rules of Evidence. Trial Court Opinion, 3/28/2025, at 6 (quoting Pa.R.E 803(6)). However, Mother's counsel objected to, and preserved on appeal, the admission of the court orders based upon DHS's failure to authenticate them, not because the contents of the court orders could be viewed as inadmissible hearsay. ***See Commonwealth v. Manivannan***, 186 A.3d 472, 480 (Pa. Super. 2018) (recognizing that a document must first satisfy requirements of authentication prior to ruling on its admissibility under the business records exception to the rule against hearsay); ***see also Commonwealth v. Koch***, 106 A.3d 705, 711 (Pa. 2014)

(plurality) (Opinion in Support of Affirmance) ("[I]f proffered evidence fails an authentication challenge, meaning that its proponent cannot prove that the evidence is what the proponent claims it to be, the evidence cannot be admitted, regardless of its potential relevance, and the hearsay query is not reached[.]"). Setting aside that the family court judge was not a qualifying witness who testified under oath to the requirements of the business record exception, the family court's analysis does not address Mother's authenticity objection pursuant to Pa.R.E. 902(4).

The record reflects that DHS attempted to introduce court orders from Child's separate dependency matter without obtaining certified copies in accordance with rule 902(4) and section 6103. It did not make any effort to establish the authenticity of the non-certified court orders through any of the methods provided for section 901(b), such as through a witness with knowledge. Without describing the orders, the solicitor simply attempted to introduce the fifteen orders in bulk without description and with the assertion that they were authenticated simply because the family court judge had signed them. N.T., 2/3/2025, at 22. Nothing in the record indicates that the family court even reviewed the exhibit before admitting them over Mother's objection. *See id.* Based upon the record before us, DHS did not establish that the orders were what the solicitor said they were: copies of each official order entered by the juvenile court in Child's dependency matter and maintained in the official docket of that matter.

In a termination of parental rights matter, however, an evidentiary error is harmless if it "could not have had any impact upon the orphans' court's decision." *In re A.J.R.-H.*, 188 A.3d 1157, 1175 (Pa. 2018). Nothing in the family court's opinion reflects that it relied upon the orders to reach its findings. While juvenile court orders can often help to establish the clear and convincing evidence needed to support a termination of parental rights, the orders DHS introduced lack substantive factual findings beyond the general form language. Furthermore, the information they do provide is largely duplicative of Molock's testimony. As such, in this matter, we conclude that the admitted orders did not impact the family court's decision, and the erroneous admission was harmless. *See A.J.R.-H.*, 188 A.3d at 1175. Thus, Mother's claim does not warrant relief.

### Harris' Testimony

Mother also contests the family court's decision to sustain DHS's objection to the admission of certain testimony from Harris. Mother's Brief at 16. Specifically, Mother sought to have him testify to her alleged continuing sobriety, which she asserts would negate DHS's claim that the conditions which led to the removal of Child continued to exist pursuant to section 2511(a)(5). *Id.* at 17.

Mother's counsel called Harris to testify to Mother's participation in the program and asked Harris about the date of Mother's attendance. N.T., 2/3/2025, at 23. After Harris stated that Mother started with the center in

August 2024, counsel for DHS objected to Harris' testimony on the grounds that Mother's attendance began after DHS filed the termination petition in May 2024. *Id.* DHS's counsel cited subsections (a)(1) and (a)(8) of the termination statute, stating that remedial efforts made by a parent after a petition for termination of parental rights is filed will not be reviewed by the court during a termination hearing. *Id.* at 25. The family court sustained the objection. *Id.*

The record confirms that Harris could only speak to Mother's efforts to address her substance abuse and her sobriety as of August 2024, three months after DHS filed a petition to terminate Mother's parental rights. While DHS and the family court correctly observe that the Adoption Act precludes the family court from considering a parent's efforts that the parent first initiates after the agency files a petition to terminate the parent's rights under subsections (a)(1) and (a)(8), DHS also filed its petition under subsections (a)(2) and (a)(5) and the family court granted its petition under these subsections. Not only do subsections (a)(2) and (a)(5) lack the statutory prohibition against consideration of a parent's post-petition efforts, such testimony is relevant to the court's consideration of the statutory analysis under these subsections. *See* 23 Pa.C.S. § 2511(a)(2) (requiring the petitioner to prove that "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent"), (5) (requiring the petitioner to prove that "the parent cannot or will not remedy

those conditions within a reasonable period of time" and "the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time"). Accordingly, the family court erred by sustaining DHS's objection and precluding Harris from testifying further.

Nevertheless, this error is likewise harmless. First, we observe that Molock confirmed, without objection, that Mother had completed a detox program through Gaudenzia in September 2024, and Mother testified that she had been sober for five months at the hearing. N.T., 2/3/2025, at 11-12, 29. Although the family court should have permitted Harris to expand upon this testimony, we have already decided that subsections (a)(8) and (b) are the dispositive subsections, rendering the error harmless. *See A.J.R.-H.*, 188 A.3d at 1175; 23 Pa.C.S. § 2511(b). Thus, Mother's claim does not entitle her to relief.

## Conclusion

The two evidentiary errors identified by Mother do not warrant further relief, as both are harmless and did not impact the outcome pertaining to termination under subsections (a)(8) and (b). As we have found that the family court's findings have support in the record, and that the family court did not abuse its discretion or err as a matter of law by terminating Mother's parental rights pursuant to section 2511(a)(8) and (b), we must affirm the orders terminating Mother's parental rights to Child. *See Matter of Adoption*

*of L.C.J.W.*, 311 A.3d 41, 48 (Pa. Super. 2024) (noting that "absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand").

Decree affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/1/2025